## Hydraulic Works Company *versus* Orr *et ux.*

1. While it is true, in general, that where no duty is owed no liability arises, this rule varies with circumstances, and where, therefore, an owner has reason to apprehend danger from the peculiar situation of his property and its openness to accident, the question of duty then becomes one for a jury, to be determined upon all its facts of the probability of danger and the grossness of the act of imputed negligence.

2. Adjoining the factory of H. was a private alley which communicated with a public street. At the entrance of the alley, where it abutted on the street, was a gate upon which was posted, "Private," and "No admittance." This gate was frequently open, although the employees of the factory were instructed to keep it shut. In this alley was erected a platform to be raised and lowered for the convenience of H. in receiving and shipping goods. When raised, this platform rested against the wall, its slight inclination thereto keeping it in place, as it had no other fastening to hold it up. A child six years old, while at play, strayed from the street into the alley and the platform falling down it was killed. *Held*, that the question of the negligence of H. was properly submitted to the jury.

January 25th 1877. Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON and WOODWARD, JJ. WILLIAMS, J., absent.

Error to the Court of Common Pleas, No. 1, of *Philadelphia county* : Of July Term 1875, No. 111.

This was an action on the case, brought by George R. Orr and wife against the Philadelphia Hydraulic Works Company, to recover damages for the death of their child, which they alleged resulted from the negligence of the defendants, who pleaded "Not guilty."

At the trial before Biddle, J., it appeared that the defendants were the lessees of a factory on Evelina street, below Third street, in Philadelphia. Along this factory, on the west side and between it and an engine house, is a ten-feet-wide alley or cartway, used by defendants and the other occupants of the factory for the purpose of receiving and shipping goods. This alley was not a thoroughfare, and at its entrance were gates, which were opened and shut as

[Hydraulic Works Co. v. Orr.]

necessity required, and upon which were posted "Private," and "No admittance." Inside of the gate, about twenty-four feet up the alley, is erected, to lean against the engine house wall, a large platform, weighing about eight hundred pounds, which, when in use, falls across the alley or cartway, and when not in use is thrown back against the engine house wall, upon hinges, upon which it moves, about thirteen inches from the wall. The platform belongs to the defendants, and is used by them to facilitate the loading and unloading of their materials and goods. It had been usual to raise and lower it by means of block and tackle and a rope drawn through a staple in the wall; but at the time of the accident from which this suit arises, there was no fastening, and the platform, therefore, was only kept in place by its slight inclination against the wall, and was liable to be tilted over whenever touched.

On the 17th of December 1873, about one o'clock in the day, a son of the plaintiffs, about six years of age, was playing on Evelina street, which is a public street and considerably frequented. He strayed, with several companions about his own age, into the alleyway, the gates of which were open. While at play under it, the platform fell upon the children, all of whom were more or less injured, the son of plaintiffs having his back broken, from which injury he died after an illness of several weeks. No one saw the accident, and it was first discovered when the outcry of the children was heard, four of whom were found under the platform, which, when let down, descended to within eighteen inches of the ground.

While it was shown that the defendant had instructed its employees to keep the gates shut, and it was in evidence that they were, on the day in dispute, left open by the driver of a wagon who had brought goods to one of the sub-tenants of the factory, it nevertheless appeared that the gates were ordinarily more frequently open than shut.

The defendant asked the court to instruct the jury, "That if the jury find that this passage-way was not a thoroughfare, but private property, lawfully used only by those having business with the factory, and that the plaintiffs' son was a mere trespasser, their verdict should be for the defendant."

The court answered that "a child cannot be treated as a trespasser or wrongdoer."

They then asked the court to instruct the jury "That there was no contract, and no public or private duty on the part of the defendant that their premises should be in a different condition from that in which they were, and the verdict should therefore be for the defendant."

The court answered: "Persons who hold premises opening on public thoroughfares must use them in such a way as to protect those who might accidentally stray upon them."

The court then left it to the jury as a question of fact, upon the

[Hydraulic Works Co. *v.* Orr.]

evidence, to find whether the defendant had been guilty of negligence in respect to the condition or character of the platform, as well as whether the defendant was bound to keep the gate fronting on Evelina street closed.

The verdict was for the plaintiffs for $1625, and the defendant took this writ, assigning the foregoing instructions of the court for error.

*Samuel Dickson* and *John C. Bullitt*, for plaintiff in error.— The questions raised are simply whether the defendant owed any duty to the plaintiffs to keep the entrance to their property closed, and the platform in any different condition from what it was.

The mere fact that the injury was sustained without fault on the part of parents or child does not establish the liability of the defendant, nor would the fact that the defendant had been guilty of carelessness in keeping the platform in the condition it was make out a right of recovery on the part of the plaintiffs. Negligence, in the legal sense, means a falling short in some duty towards the plaintiff, and that duty can only arise out of some contract obligation, express or implied, in which case it does not extend beyond the parties to the contract; or out of some confidence or trust reposed, as where an express or implied license or invitation has been held out; or out of some general duty towards the public at large, thereby including the individual.

The numerous cases in which railroad companies have been held liable for injuries to persons on their track rest upon the fact that they had reason to expect that the track might be used as a thoroughfare: Kay *v.* Railroad Company, 15 P. F. Smith 269; Railroad Company *v.* Lewis, 29 Id. 33.

So, too, in the cases where persons have been injured upon the premises of another, there has been the express or implied license to enter, which raised the obligation to inflict no injury: Hargreaves *v.* Deacon, 25 Mich. 6, cited in Wharton on Negligence, note to sect. 344; Zoebisch *v.* Tarbell, 10 Allen 385; Frost *v.* Grand Trunk Railway, Id. 387; Coe *v.* Platt, 5 E. L. & E. 491; Lygo *v.* Newbold, 24 Id. 507; Southcote *v.* Stanley, 38 Id. 295.

To make the owner of a lot adjacent to a highway liable to one falling into a pit or hole on his premises, it must abut on the highway so as to interfere with its lawful use: Barnes *v.* Ward, 9 C. B. (67 E. C. L.) 392; Hounsell *v.* Smyth, 7 C. B. N. S. (97 E. C. L.) 731; Gautret *v.* Egerton, Law Rep. 2 C. P. 371. The platform in question was twenty-four feet back from the street, in the private yard of the defendant. It did not abut on the highway, and no use of the highway as a highway could be interfered with by its existence. No machine in the factory was more entirely private than this platform, and, undisturbed, it was perfectly safe and harmless, and the owner had a

[Hydraulic Works Co. v. Orr.]

right to assume that no one would trespass upon or meddle with it: Abbott v. Macfie, 2 H. & C. 744 ; Mangan v. Atterton, Law Rep. 1 Ex. 239.

The rule that a child of tender years cannot be guilty of contributory negligence has nothing to do with this question. The verdict of the jury establishes that this child used all the discretion that could be expected of him, but there was no reason to anticipate that he would come into the yard of defendant or put a hand upon the platform. He may not have been to blame for what he did, nor his parents for letting him run as he was used to run, but more is necessary to make the defendant responsible.

*Robert E. Pattison* and *John Cochran*, for defendants in error.— Was not the defendant guilty of negligence in erecting this platform without putting a fastening thereon ? The alley was broad and opened and abutted upon a public street.

A jury alone can determine what is negligence and whether it has been proved : McCully v. Clarke, 4 Wright 406 ; Turnpike Co. v. Railroad Co., 4 P. F. Smith 345 ; Kay v. Railroad Co., 15 Id. 274 ; Pennsylvania Railroad Co. v. Lewis, 29 Id. 33.

Chief Justice Agnew delivered the opinion of the court, February 5th 1877.

It is true that where no duty is owed no liability arises. If therefore one leaves a stick of timber standing upright against his wall, or an open pit in his private yard to which others have not access, and a person strays in without invitation, or comes in without right, and pulls down the timber upon himself, or falls into the pit, he can have no action against the owner of the yard for the alleged negligence. He had no business there and the owner owed him no duty. But it has been often said, duties arise out of circumstances. Hence, where the owner has reason to apprehend danger, owing to the peculiar situation of his property and its openness to *accident*, the rule will vary. The question then becomes one for a jury, to be determined upon all its facts of the probability of danger and the grossness of the act of imputed negligence. Such was the nature of this case. This building was a factory in which several kinds of business were carried on in different stories, requiring the use of a hoisting apparatus above and an inclined plane below for the easy carriage of heavy articles, machinery, &c., into and out of the factory. These appliances were approached by means of a private opening or cartway shut in by a gate, which their use required to be often opened for the ingress of wagons and hands engaged in the business. The gate and passage-way opened out upon a public and much frequented street, where persons were passing and children playing. Unlike an ordinary private alley, this passage was often open, and therefore liable to the incursions of chil-

dren, and even grown persons, from thoughtlessness, accident or curiosity. Now, the inclined way, which did the injury, was a dangerous trap. It was a heavy platform weighing eight or nine hundred pounds, attached by hinges within eighteen or twenty inches of the wall, and when lowered it fell across the cartway. When not lowered it stood upright against the wall, leaning so little beyond the centre of gravity that a jar or a slight pull would cause it to fall forward. Its fall in this instance caught four children beneath it, one had his back broken, another his hands mashed and two escaped under the cavity. It was held up by no hook or other fastening, but merely rested by its own slight weight beyond the equipoise, ready, therefore, to catch children, like mice beneath a dead-fall. When wagons passed it was often held up by hand, and a witness saw it fall against the wheels. Now, can it be righteously said that the owner of such a dangerous trap, held by no fastening, so liable to drop, so near a public thoroughfare, so often open and exposed to the entries of persons on business, by accident, or from curiosity, owes no duty to those who will be probably there? The common feeling of mankind, as well as the maxim *sic utere tuo, ut alienum non lædas*, must say this cannot be true—that this spot is not so private and secluded as that a man may keep dangerous pits or deadfalls there without a breach of duty to society. On the contrary, the mind, impelled by the instincts of the heart, sees at once that in such a place, and under these circumstances, he had good reason to expect that one day or other some one, probably a thoughtless boy in the buoyancy of play, would be led there, and injury would follow—especially, too, when prompted by knowledge that a fastening was needed. Perhaps the best monitor in such a case is the conscience of one who feels, in his dreadful recollection, the crushing sense that he had left such an engine of ill to take the life of an innocent child. Such, too, is the humanity of the law, that one may not justifiably, or even excusably, place a dangerous pitfall, a wolf-trap, or a spring-gun, purposely to catch and injure even wilful trespassers poaching upon his grounds. The common feeling of mankind, guided by the second branch of the great law of love, and the common sense of jurors, must be left, in such a case, to pronounce upon the facts. We see no error, therefore, in submitting this case, on its facts, to the verdict of a jury. The verdict, when approved by the court, must be permitted to stand; for we take it no judge who sees manifest injustice done by the verdict will permit it to stand. An upright judge does his duty quite as well when he strikes down a false and unjust verdict, as when he approves of that which he cannot condemn.

Judgment affirmed.

Paxson, J., dissents.