## DALLAS ELECTRIC COMPANY ET AL. v. G. W. MITCHELL.

### Decided November 7, 1903.

**1.—Master and Servant—Electric Companies Operating Jointly—Liability for Personal Injury—Pleading.**

In an action for personal injury by a lineman of an electric company, brought against it and also against another electric company and the receiver thereof, the allegations of plaintiff's petition charging that the defendants had combined their business and were managing and operating it jointly, and that plaintiff was injured while in the employ of each and all of them, are held sufficient to show the relation of master and servant and the liability of the defendants for the injury.

**2.—Same—Corporations—Receiver—Joint Control—Agency.**

Where a corporation, with the consent of its receiver, remains in joint control and management with him of its property, it may be held liable for the acts and negligence of the receiver as its agent.

**3.—Same—Evidence.**

Where, in such action, a witness was asked how it happened that one of the defendant companies was furnishing power to the patrons of the other, and what was the custom, if any, about interchanging power, the question and proposed pertinent answer of the witness were not subject to the objection that the same was immaterial and irrelevant to any issue in the case.

**4.—Same—Opinion.**

So much of the answer of the witness as stated that he never saw the papers that were drawn up, "but it was naturally assumed that one and both companies belonged to the same people," should have been excluded, had suitable objection thereto been interposed.

**5.—Same—Appearance of Appliances as Indicating Danger.**

A statement by the witness that the "cut-off box," designed for turning off the electric current from the wires—the failure of which to properly operate caused plaintiff's injury—in the condition it was when the foreman went to turn off the electricity, would indicate that the box was not in use, was admissible under the issues of the case as to the exercise of ordinary care by the foreman and the company.

**6.—Same—Opinion—Electricity.**

The answer of the witness to the question, "Would any experienced lineman, under the apparent conditions of the box, have thought it necessary to climb that pole for the purpose of examining to see whether or not somebody had jumped the wires out of the box?" would have been matter of opinion, and its admission an invasion of the province of the jury in determining the requisite degree of care.

**7.—Same—Leading Question—Opinion.**

A further question asking the witness, "Would it not also be his duty [that of the foreman or an experienced lineman about to use the box to cut off the current] to see that the wires passed through it, so that pulling it would kill the wires?" was objectionable as leading and as eliciting matter of opinion.

**8.—Same—Evidence—Belief.**

Under the facts of this case it was competent for the plaintiff to testify that he believed he was working for the receiver and the defendant company for which the receiver was appointed, as tending to show that such relation existed.

**9.—Same—Degree of Care—Licensee—Joint Use of Electric Poles.**

One of the electric companies having agreed that the other company should string wires upon its poles and arranged for a joint operation of the electric currents, an employe of such other company, in using the poles to attend to its wires, was not a mere licensee, and the owning company owed him the duty of using ordinary care to see that he was not injured.

**10.—Same—Charge—Joint and Several Liability.**

A charge that if the jury found that ordinary care to prevent injury to plaintiff was used by all the defendants, then the verdict should be in favor of all the defendants, without further qualification in this rspect, was erroneous as implying the converse of the proposition, viz., that if all the defendants did not use such care, then the verdict should be against all of them.

Appeal from the District Court of Dallas. Tried below before Hon. T. F. Nash.

*Etheridge & Baker,* for appellants.

*W. P. Finley* and *W. J. J. Smith,* for appellee.

TALBOT, ASSOCIATE JUSTICE.—G. W. Mitchell sued the Dallas Electric Company, E. M. Reardon, as receiver of said Dallas Electric Company, and the Standard Light and Power Company, in the District Court of the Fourteenth Judicial District, to recover damages on account of personal injuries alleged to have been sustained by reason of their negligence. A jury trial on the 13th day of October, 1902, resulted in a verdict and judgment in favor of plaintiff against all of the defendants, and motion for new trial having been overruled, they excepted and appeal.

Appellee alleges, in substance, that the defendants, the Dallas Electric Company and the Standard Light and Power Company, are corporations, duly organized and existing under the laws of Texas, and were on the 4th day of October, 1901. That the defendant, E. M. Reardon, at that time was the duly appointed and acting receiver of the said Dallas Electric Company, and resided in Dallas County, Texas. That prior to and on said 4th day of October, 1901, the said Dallas Electric Company and the said Standard Light and Power Company were engaged in the production, manufacture and sale of electricity in the city of Dallas, having poles set along the streets of said city of Dallas and wires strung upon the same to convey electricity to their patrons. That on the said 4th day of October, 1901, appellee was in the service and employment of the Dallas Electric Company and E. M. Reardon, as receiver thereof, and of each of them, in the capacity of lineman, and while engaged in the line of his duties in handling and transferring wires of the said Dallas Electric Company and E. M. Reardon, from their poles stationed at the northwest corner of Ervay and Marilla streets to and upon poles of the Standard Light and Power Company, which were also situated at the corner of Ervay and Marilla streets, he received a severe electrical shock causing him serious and permanent injuries.

He alleges that John Wood was foreman and vice-principal of the defendants Dallas Electric Company and E. M. Reardon, receiver, and that he, appellee, was under the control and subject to the direction of said Wood, who, as such foreman and vice-principal, had authority to command, control, employ and discharge appellee and other men work-

ing with him. Appellee further alleges that before he and those engaged in the work with him began transferring the wires from the poles of the Dallas Electric Company and E. M. Reardon, to the poles of the Standard Light and Power Company, the said John Wood told them to wait until he, Wood, went to a point on Ervay street, north of Marilla street and pulled the primary boxes, which, when pulled, cut off all electricity from the wires which they were to handle and transfer. That appellee and the others who were so engaged in said work did not begin work until said Wood returned. That Wood returned to them at the northwest corner of Ervay and Marilla streets in a few minutes, and announced to them that the electricity had been cut off and that the wires were dead, and directed them to proceed to work. That he and those engaged with him at once began to work, transferring said wires, resting under the belief, from what the said foreman had said, that the current of electricity had been cut off of the wires which he was to handle, and that said wires were dead. That instead of being dead, as he, appellee, supposed, from the statement of said Wood, they were heavily charged with electricity, and that by reason of having come in contact with them he was injured.

The manner of handling the wires and character of injuries sustained were fully set out. Appellee alleged that the cut-off box that said foreman said he would go and pull was situated on a pole on Ervay street north of the point where he was at work, and was a contrivance the purpose of which, when pulled, was to cut off the electricity from the wires and deaden them; that said box was defective, and that the wires that should have passed through it had been jumped out of it, or not so arranged with reference to the wires as to perform, when pulled, the function for which it was intended. Appellee further alleged that had the said wires and said box been properly arranged, by pulling down the plug of said box said wires could have been killed and freed from electricity, but that the defendants, Dallas Electric Company and E. M. Reardon, as receiver thereof, and the Standard Light and Power Company, had caused the said wires to be arranged with reference to said box so that the portion of said wires south could not be deadened or killed and freed from electricity by pulling the plug in the said box. That each of defendants knew of this condition of the box and wires, and could have known by the use of ordinary care that said box and wires were so arranged that said box would not perform the function for which it was designed, and that said wires were live.

That defendants and each of them negligently and carelessly failed to repair and correct the defective arrangement of said wires and box, and failed to notify plaintiff and the said Wood, and that by reason of such negligence and the negligence of the said foreman Wood in failing to ascertain that said wires and box were so defectively arranged, appellee sustained injuries as alleged. Appellee further charged that the Dallas Electric Company, E. M. Reardon, receiver thereof, and the Standard Light and Power Company, at the time he was injured and prior thereto

had combined and consolidated, and were in fact operating together as one concern. That each of said defendants was guilty of all the acts of negligence complained of in his petition, and participants therein. That if said work of transferring said wires was not being done and paid for by defendants, or either of them, then the same was being done by some person or persons or association of persons to plaintiff unknown, but that said work was being done with the full knowledge, acquiescence, consent, and by authority, of defendants and each of them, and for the benefit of defendants and each of them; that each of defendants had represented to appellee and John Wood that appellee and said Wood and each of the gang working with them, was working for defendants and each of them, and that it was the duty of defendants and each of them to furnish appellee safe appliances with which to work and to exercise ordinary care to avoid injury to him.

The appellants filed separate answers, excepting generally and specially to appellee's petition. The appellant Dallas Electric Company denied all the allegations in appellee's petition, and pleaded specially that prior to the 4th day of October all of its properties and plant were in the possession of, and being operated by, E. M. Reardon, as receiver, who had been duly appointed by the Circuit Court of the United States for the Northern District of Texas. The Standard Light and Power Company pleaded a general denial, and E. M. Reardon pleaded general denial, and that if appellee sustained injuries the same were the result of his own negligence in that appellee was a lineman of large experience and knew it was dangerous to take hold of two different wires at the same time, and notwithstanding such knowledge, he negligently and unnecessarily took hold of two separate wires at the same time, but for which he would not have been injured. This defendant denied that appellee was in his employ, either as receiver or otherwise, but averred that appellee, at the time injured, was in the employ of a committee of the bondholders of the Dallas Electric Company, and in nowise under the control of defendant Reardon. That as to him, Reardon, the said committee of bondholders and appellee, in the construction work being done, were mere licensees.

Appellants, by their first, second, third and fourth assignments of error, complain of the action of the court in overruling their respective special exceptions to appellee's petition.

The special exception of the Dallas Electric Company is, in substance, that from appellee's petition it manifestly appears that at the time of the alleged injuries to plaintiff, the defendant and its properties were in the possession of and being operated by E. M. Reardon, as receiver, duly appointed and qualified, and hence no cause of action is shown against it. The special exception of the Standard Light and Power Company is to the effect that appellee's petition shows no cause of action against it, because it does not appear therefrom that appellee sustained any contract relation whatever with this appellant.

The special exceptions of E. M. Reardon are:

"(1)   Defendant specially excepts to that portion of plaintiff's petition which undertakes to aver that he held out to plaintiff that plaintiff was in his employ, and that no such acts, facts or circumstances are averred as are sufficient to create the relation of master and servant between plaintiff and this defendant by estoppel.

"(2)   Said defendant specially excepts to so much of plaintiff's petition as undertakes to set forth that certain persons or association of persons were the agents of this defendant in the matter of the construction work upon which the plaintiff was engaged at the time of the accident, in that no such acts, facts or circumstances are averred as are sufficient to show that the relation of agency existed between this defendant and such persons or association of persons."

When tested by the allegations of appellee's petition, which are to be taken as true for the purposes of these exceptions, we believe there is no error in the court's action in refusing to sustain either of the foregoing exceptions.  The appellee alleged, in effect, that the business of appellant was identical, managed and operated in the same city, for the same purposes; that appellants at the time of the injury to appellee had combined and consolidated their business, and in fact were operating together and carrying on said business as one concern, for their joint use and benefit; that by invitation, consent and authority of each of the appellants, appellee was at work with and upon the property of each of appellants at the time he was injured; that appellants and each of them had represented to appellee and to the foreman, John Wood, that they and each of them were employed by and working for defendants and each of them.  While the facts and circumstances, if known to appellee, creating the relation of master and servant between appellants and appellee, might have been more fully alleged, yet we believe the petition, taken as a whole, is sufficient in that particular and not obnoxious to the special exception leveled at it on that ground.

It may be conceded as a correct proposition, generally, that when all the properties of a corporation are legally in the possession of and being operated by a receiver, such corporation is not liable for injuries resulting from the negligent operation of such properties by the receiver.  In order, however, to relieve the corporation from liability in such case the management and control of the corporate property must be exclusive. If the corporation, with the consent of the receiver, remains in joint control and management of its property, and operates the same in conjunction with its receiver, or if the appointment of the receiver was collusive and made at the instance of the corporation for its benefit and with a view of placing its property beyond the reach of its creditors, or to shield it from liability for injuries inflicted by reason of its negligence, then it seems such receiver might be held to be the agent of such corporation and liable for his acts.  Hicks v. Railway Co., 62 Texas, 41; Ryan v. Hays, 62 Texas, 52; Texas & P. Railway Co. v. Johnson, 76 Texas, 421.

The appellants, by their fifth assignment of error, attack the action

of the trial court in permitting the appellee's witness Frank Swor to answer the following questions:

(1) "How did it happen that the Standard Light and Power Company were furnishing power to the patrons of the Dallas Electric Company?" To this question and proposed answer, the appellants objected on the grounds "that same was immaterial, irrelevant and not pertinent to any issue in the case." The objection was overruled and the witness answered, "I can not say positive why it was. I never saw the papers that were drawn up, but it was naturally assumed that one and both companies belonged to the same people."

(2) "State what the custom was, if any, about interchanging power." To this question and proposed answer the same objection was interposed, with the additional ground that same was misleading. The court overruled the objection and the witness stated, "Well, they interchanged power; that is the Dallas Electric Company put it on the Standard Light and Power Company's wires whenever they saw fit, or needed the use of the power." The objection to this testimony, as appears from counsel's brief, is based upon the proposition that appellant Reardon's special exception, "to so much of appellant's petition," as undertook to aver that the two electric companies were operating together as one concern, had been sustained, and that feature of the case eliminated. The appellant is not supported in this contention by the record before us. The judgment of the court recites that, "so much of the allegation in the petition as charged partnership between the defendant corporations and a trust between the defendant corporation be and the same is hereby sustained, and the said allegation of partnership and trust in plaintiff's petition is hereby stricken out," but that "the exception to the remaining portion of said paragraph be and the same is hereby overruled." The remaining portion of this paragraph of plaintiff's petition, among other things, charged that "appellants, at the time appellee was injured and prior thereto, had combined, consolidated, and were in truth and in fact operating together as one concern." Under the allegations of appellee's petition we believe the facts sought to be elicited were relevant and pertinent, and that the grounds of the objection urged not well taken. That portion of the answer of the witness to the first question, wherein he states, "I never saw the papers that were drawn up, but it was naturally assumed that one and both companies belonged to the same people," was improper, and suitable objection to such portion of said answer, had it been made, should, and doubtless would, have been sustained.

Appellant's sixth assignment of error relates to the action of the court in refusing to allow the witness Swor to testify at the instance of appellant that the "cut-off box," in the condition it was when the foreman John Wood went to pull it, to a man not knowing that the wires had been jumped out of the box, would indicate that the current of electricity was cut off. To this testimony objection was made upon the ground that it called for the opinion of the witness, and the objec-

tion sustained. We can not agree to this ruling. The condition of the box and what its appearance indicated at that time to Wood was a material fact in the case, and if the witness 'knew what the condition of the box at that time indicated, his statement of it would not be the expression of an opinion or conclusion of the witness, but a fact. We find, however, that the statement of facts shows that this witness, as well as John Wood, did testify along this line, and stated, without objection, that "if I should see no wires going into the box, it would indicate to me that the box was not in use at all, but if I did not know that the wires had been jumped out of the box, and saw that it was pulled, that would indicate to me that the current had been cut off." The witness Wood testified substantially the same.

It was an important, if not the controlling, question in the case, whether or not the foreman, John Wood, exercised ordinary care in the matter of ascertaining whether or not the current of electricity had been cut off the wires with which appellee had to work. The determination of this question was for the jury, and we regard the exclusion of the answer of the witness, Ben Murrell, to the first question presented in appellants' bill of exception number 4 and seventh assignment of error as being correct. The question was, "Would any experienced lineman, under the conditions of the box as testified to by you, have thought it necessary to climb that pole for the purpose of examining to see whether or not somebody had jumped out the wires?" The foreman Wood contented himself, in the examination of the cut-off box to find out whether or not the current had been cut off and the wires deadened, by merely looking up at it from the ground, and his conduct involved the question of whether or not, in the exercise of ordinary care to avoid injury to appellee, this was sufficient, or whether the exercise of such care would require him to ascend the pole on which said box was situated and make a closer examination of the same. This was the very question for the determination of the jury, from all the evidence and circumstances of the case, and the answer sought to be elicited from the witness by this interrogatory would have been but his opinion, and an invasion of the province of the jury. What has been said with reference to the action of the court in excluding the testimony of the witness Swor is applicable to the second question asked the witness Murrell, and to the court's ruling thereon, as presented in this assignment of error.

The eighth assignment of error presents the same question contained in appellants' seventh assignment of error, and what has been said of that assignment disposes of this one.

This brings us to appellants' ninth assignment of error. It appears that while the witness Frank Swor was being examined by the attorney for appellee, the following question was propounded to him: "Now, Mr. Etheridge asked you if a man, looking up and seeing the boxes pulled, the wires south of that were dead, would it not also be his duty to see what passed through the box?" Appellants objected to this ques-

tion on the grounds that it is leading and suggestive of the desired answer, and because involving a question of law. The objections were overruled, and "thereupon and before the witness had answered the said question, the appellee's counsel propounded to him the further question: "Was it not his duty to see that the wires passed through it, so pulling it would kill it;" To this question the same objection, that it was leading, and suggestive of the desired answer and involved a question of law, was urged, but the objection was overruled and the witness permitted to answer, "Yes." As said in discussing the action of the court in excluding the answer of the witness Ben Murrell to the first question asked, as shown by bill of exception number 4 and seventh assignment of error, one, if not the vital issue in the case, was whether or not John Wood exercised ordinary care in acting upon the appearances of the cut-off box, and in not ascending the pole and making a closer examination of its condition. The question here complained of was clearly leading, and the answer thereto the expression of the opinion of the witness, and should have been excluded. The issue here presented was sharply drawn, and was a most material point for the decision of the jury. Evidently the opinion of this witness was calculated to and doubtless did exercise great influence with the jury in arriving at their verdict, and is such an error as will, if for no other reason, require a reversal of the case.

In view of the conduct of the appellants in the management of their business, as disclosed by the evidence and record in the case, we believe no serious error was committed in permitting the appellee to testify that he believed he was working for the Dallas Electric Company, Mr. Reardon, receiver; nor in allowing him to state that John Wood, and no other person, ever told him that he was not working for that company. The bare belief, it is true, of the appellee that the relation of master and servant existed between him and the appellant Dallas Electric Company, or that such relation existed between said appellant and John Wood, not induced or created by the acts and conduct of appellant, would not have the effect to create such relationship, nor render liable the Dallas Electric Company as employer of said Wood. If, however, the Dallas Electric Company represented to appellee that he was in its employ, and otherwise by its acts, calculated to and intended to accomplish that object, induced appellee to believe that he was its servant, or that John Wood was its employe, and' accepted appellee's services, such acts on its part would, we believe, estop it to deny its liability for its wrongful and negligent acts or such acts of said Wood, resulting in injury to him.

A number of questions were asked appellants' witness Bonta, by their attorney, as to the relationship of one Eames to appellants. It seems from the questions propounded that it was the purpose of appellants to show by this witness that Eames represented the bondholders' committee in the reconstruction work and repairs done on the Dallas Electric Company's properties, and not the Dallas Electric Company, nor

either of the other appellants. Objections were made to the several questions asked by appellee, on the grounds that each of said questions were leading and called for the opinion of the witness. The court sustained the objections, and in this we believe there was no error. Besides, an inspection of the record discloses that the witness did testify to the facts sought to be established by the questions and answers, notwithstanding the court excluded them at the time here complained of.

One paragraph of the court's general charge reads as follows: "You are instructed that if you find and believe from the evidence before you that the defendant, E. M. Reardon, receiver, and the bondholders of the Dallas Electric Company, were operating and co-operating together in the city of Dallas, at the time of plaintiff's injury, in the matter of furnishing electricity to their patrons in the city of Dallas; that is to say, if you believe from the evidence before you that the possession of E. M. Reardon, receiver, was not exclusive as receiver of the properties of the Dallas Electric Company, and that he suffered and permitted the Dallas Electric Company, through its bondholders, to have joint possession of the properties, for the purpose of reconstructing the plant; and you further find and believe, from the evidence before you, that the primary boxes had been so rearranged with reference to the primary wires, that when the said primary boxes were pulled, it would not cut off the current of electricity from the primary wires; and if you also find that the defendant Standard Light and Power Company had rearranged the primary boxes at the corner of Main and Ervay streets, and that said last named company had not notified John Wood, or the plaintiff, of such rearrangement of the boxes, you will find against all three of the said defendants, unless you find that a person of ordinary prudence would not have used any more care than was used by said defendants, or either of them, to avoid the accident."

This paragraph of the court's charge is assailed on the ground that appellee sustained no contract relation to the Standard Light and Power Company, and that although he and his employer may have had the consent of that company to work upon its poles, yet the only duty that company owed appellee was the negative one of exercising ordinary care to avoid inflicting injury upon him, and that the Standard Light and Power Company did not owe appellee the duty of exercising ordinary care to see that he did not sustain injury. It also claimed that this charge is error as to the appellant Reardon, if appellee was in the employ of the bondholders of the Dallas Electric Company or of a committee of such bondholders, and not in the employ of Reardon. The theory upon which this charge is attacked is that appellee was not in the employ of either the Standard Light and Power Company or of E. M. Reardon, and that, although appellee and the persons for whom he was at work at the time he was injured, may have been doing the work with the consent and by permission of that company and Reardon, yet he and they were mere licensees. Ordinarily no other duty is due a licensee than that stated, and admitting, for the sake of argument, that

in so far as the appellants named are concerned, that appellee and those in whose employ he was, were mere licensees, still we are of the opinion that the above rule can not be invoked under the facts in this case. This case is unlike one where a person, by invitation or otherwise, goes upon the premises of another and is injured by reason of some defective condition thereof which could not have been reasonably foreseen and anticipated by the owner, or where such person, having gone upon the premises without having been directed to do so, or without the consent and permission of the owner, engages in work with dangerous machinery, situated on said premises, and is hurt. In such case we believe the rule contended for by appellants would apply. But here the appellants are engaged in conducting and carrying on business affecting the general public, and necessarily to some extent dangerous in its nature and operation. The danger incident to the handling of appellants' wires and the consequence of coming in contact with wires charged with electricity was well known to them. The injury to appellee could have been reasonably anticipated by them; and if they had combined and consolidated their business and were operating together as one concern, or if the appellee, with their knowledge and consent, was permitted to work with and upon the wires and poles as alleged in appellee's petition, we believe that under such circumstances they, or such of them as so knew and permitted said work, owed him the duty to exercise ordinary care to prevent injury to him while so engaged.

Complaint, however, is made of this charge in another respect, and we believe it is subject to the criticism. It will be observed that the court in effect instructed the jury that if the possession of E. M. Reardon was not exclusive as receiver of the properties of the Dallas Electric Company, and permitted the Dallas Electric Company, through its bondholders, to have joint possession of the properties for the purpose of reconstructing the plant, and that the Standard Light and Power Company had rearranged the primary boxes at the corner of Main and Ervay streets, so that the box when pulled would not cut off the current of electricity from the wires, and said last named company had not notified John Wood or the appellee of such rearrangement of the boxes, then to find against all three of the defendants. This charge does not submit any act of the Dallas Electric Company and E. M. Reardon, or of either of them, for the determination of the jury as negligence on their part, but assumes, as negligence per se on the part of the Standard Light and Power Company, the rearrangement of the primary boxes and failure by it to notify John Wood or appellee of such rearrangement, and authorizes a verdict against Reardon and the Dallas Electric Company for such negligence.

This charge was erroneous and calculated to, and doubtless did, mislead the jury, and if the error could have been corrected by other portions of the court's charge, or by requested special charges, we find none in the record to that effect. If the Dallas Electric Company and E. M. Reardon, as receiver, was in the joint possession of the Dallas

Electric Company's properties, operating the same for their joint account, or permitted the bondholders of said electric company, as their or his agents, to reconstruct and repair such properties, and John Wood was in their employ, or the employ of either of them, as foreman, with authority to control and command appellee in his work, and Wood failed to exercise ordinary care to ascertain the condition of the cut-off box and to see that the current of electricity was in fact cut off and the wires deadened, and this was negligence, and proximately caused appellee's injuries, then we think the Dallas Electric Company and E. M. Reardon, as receiver, would be liable to appellee for the damages so sustained by him. And if the Standard Light and Power Company's business and that of the Dallas Electric Company and E. M. Reardon had been combined and consolidated, and they were acting together in operating said business as one concern, then it would seem that all would be responsible for the acts of negligence of either, and could be required to respond in damages for the injury, if any, inflicted upon the appellee. If, however, the Standard Light and Power Company had not consolidated its business with that of Reardon and the Dallas Electric Company, and was not acting and co-operating with them, but authorized or permitted appellee to work upon its poles and with its wires, and failed to exercise ordinary care to keep said wires and poles in a reasonably safe condition to prevent injury to appellee while at work upon and with the same, then it would seem said company would be liable to appellee for the damages sustained by reason of his injuries, regardless of the liability of the other appellants.

In another paragraph of the court's charge the jury were instructed as follows: "It is the duty of the master to furnish reasonably safe appliances for the use of the servant. It was therefore the duty of the party employing the plaintiff to use that care which an ordinarily prudent person would have used under similar circumstances to see that the current of electricity had been cut off from the wires which he was handling at the time of the accident; and if you find and believe from the evidence that the degree of care mentioned last was used by all the defendants, then you will find in favor of all of said defendants." The converse of this proposition is, that if *all* the defendants did *not* use such care to see that the current of electricity had been cut off from the wires, in that event the verdict should be against *all* of the defendants. This might be true or not according to the finding of the jury upon the facts touching each defendant, under proper instructions submitting the issues applicable to each of them. To this unqualified instruction we do not assent. If an opportunity had been afforded them, the jury might have concluded from the evidence that if the Standard Light and Power Company exercised ordinary care to provide the wires with a "cut-off box" properly arranged to cut off from the wires the current of electricity, when pulled, and had not combined its business with that of the Dallas Electric Company and Reardon, receiver, their duty had been performed, and that it was not required of them to go

further and use such care to see that such box had been pulled and the electricity actually cut off.

The objection to the charge upon the ground that there was no "contract relation" existing between appellee and the Standard Light and Power Company, and that its only duty was to exercise ordinary care to *avoid inflicting* injury upon appellee, can not be sustained under the evidence as shown by the record before us. In so far as the charge is in conflict with the special charge number 14, given at the request of the appellants, it is sufficient to say that such error, if any, will not likely occur upon another trial. Practically the same vice exists, as that above discussed, in the paragraph of the court's charge set out in appellant's fifteenth assignment of error, and the same objections substantially urged against it. What has already been said therefore with reference to the other paragraphs is applicable, and sufficient to dispose of this assignment. The same may be said of the sixteenth, seventeenth, eighteenth and nineteenth assignments of error.

By his requested special charge number 4, as set forth in the twentieth assignment of error, appellant Reardon sought to have the issue submitted to the jury, whether or not the committee of the bondholders of the Dallas Electric Company sustained the relation of "independent contractors" to the said Reardon, as receiver, and if so, to find a verdict for him, "notwithstanding they should further find that said bondholders' committee, or some one in their employ, may have been guilty of negligence resulting in injury to the plaintiff." In our opinion, this issue was not sufficiently raised by the evidence to require its submission, and the court's refusal to give it was correct.

Appellants' remaining assignments of error from the twenty-first to thirtieth, inclusive, relate to the action of the court in refusing special charges asked. These charges, in the main, were upon the weight of the evidence, and relate to matters discussed and disposed of under other assignments, not demanded by the evidence, and contained, for the most part, incorrect propositions of law as applied to the evidence. In view of the fact that the case is to be remanded, we deem it proper to say that we think the defendants are entitled to have their theory of the law presented affirmatively to the jury by appropriate instructions.

The issues raised by the evidence applicable to each defendant should be, in our opinion, separately submitted to the jury, so that confusion may be avoided, and the facts upon which each one's liability, if liable, rests, may be clearly understood.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*