DENISON LIGHT & POWER CO. v.
PATTON.†

(Court of Civil Appeals of Texas. Feb. 18, 1911. On Motions for Rehearing and for Additional Conclusions of Fact, March 25, 1911.)

1. ELECTRICITY (§ 15*)—INJURIES INCIDENT TO PRODUCTION—LICENSEES.

A telegraph company and a power company maintained separate wires in the streets of a city. At one point the wires of the two companies were in dangerous proximity to each other. A lineman of the telegraph company, to repair a defect in the telephone wires, swung a platform from a messenger wire of the telephone company so that the platform rested on the light wires, and he received an electric shock from the light wires while on the platform. The two companies had equal rights to maintain the wires in the streets. The dangerous proximity of the wires of the two companies was known to the vice principal of the power company. The employés of the two companies used with the acquiescence of the companies the poles of either when necessary to make repairs. Held, that the lineman was at

least a licensee, so that the power company owed him the duty of exercising ordinary care to prevent the sending of electric currents through its wires while he was at work making the repairs.

[Ed. Note.—For other cases, see Electricity, Cent. Dig. § 8; Dec. Dig. § 15.*]

2. ELECTRICITY (§ 19*)—INJURIES INCIDENT TO PRODUCTION—NEGLIGENCE—EVIDENCE.

In an action against an electric power company for injuries to a telephone lineman receiving an electric shock by coming in contact with light wires while repairing telephone wires, evidence held to justify a finding of actionable negligence in causing the light wires to become charged while the lineman was at work.

[Ed. Note.—For other cases, see Electricity, Cent. Dig. § 11; Dec. Dig. § 19.*]

3. ELECTRICITY (§ 19*)—INJURIES INCIDENT TO PRODUCTION—ASSUMPTION OF RISK—QUESTION FOR JURY.

Whether a lineman of a telephone company, injured by an electric shock from the wires of an electric power company while repairing a telephone cable, assumed the risk of injury, held, under the evidence, for the jury.

[Ed. Note.—For other cases, see Electricity, Cent. Dig. § 11; Dec. Dig. § 19.*]

4. ELECTRICITY (§ 19*)—INJURIES INCIDENT TO PRODUCTION—NEGLIGENCE—EVIDENCE.

In an action against a power company for injuries to a lineman of a telephone company by coming in contact with live wires of the power company, evidence that frequently, prior to the accident, the companies used the same poles for wires, and that there were many places, in addition to the place where the lineman was injured, where the telephone company's wires were down close to the power company's wires, was admissible to meet the issue raised by the power company that the lineman was a trespasser on its property.

[Ed. Note.—For other cases, see Electricity, Cent. Dig. § 11; Dec. Dig. § 19.*]

5. EVIDENCE (§ 544*)—OPINION EVIDENCE—COMPETENCY OF WITNESS.

One having a long experience in electrical work is not competent to give his opinion whether one could be permanently injured by a shock of electricity which did not manifest itself by a mark on the body, for the question calls for the knowledge of a medical expert.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 2356; Dec. Dig. § 544.*]

6. APPEAL AND ERROR (§ 1058*)—HARMLESS ERROR—ERRONEOUS EXCLUSION OF EVIDENCE.

Where a witness having long experience in electrical work stated fully, so far as his knowledge extended, the effect of electric shocks on a human being, the error, if any, in excluding his opinion as to whether one could be permanently injured by a shock of electricity which did not manifest itself by a mark on the body, was not prejudicial.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4200–4206; Dec. Dig. § 1058.*]

7. DAMAGES (§ 132*)—PERSONAL INJURIES—EXCESSIVE DAMAGES.

One 25 years old earning $60 per month, with a life expectancy of 38.81 years, was injured by electric shock. Before the accident he was strong and healthy, but since that time he had been an invalid unable to work. A physician testified that he was a nervous wreck and suffered a great deal, and that his injuries were permanent, so that he would never

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes
† Writ of error granted by Supreme Court.

be able to do any physical labor. *Held*, that a verdict of $12,000 was not excessive.

[Ed. Note.—For other cases, see Damages, Cent. Dig. § 374; Dec. Dig. § 132.*]

Appeal from District Court, Grayson County; B. L. Jones, Judge.

Action by B. B. Patton against the Denison Light & Power Company. From a judgment for plaintiff, defendant appeals. Affirmed.

Harry P. Lawther and Head, Dillard, Smith & Head, for appellant. E. J. Smith, John C. Wall, and W. S. Bramlett, for appellee.

TALBOT, J. The appellee, Patton, brought this suit against the appellant, Denison Light & Power Company, and the Southwestern Telegraph & Telephone Company, to recover damages for personal injuries alleged to have been sustained by him as the result of an electrical shock received October 23, 1908, while in the employ of the Southwestern Telegraph & Telephone Company. The defenses pleaded by both defendants were a general denial, contributory negligence, and assumed risk. Upon the conclusion of the evidence, the trial court instructed a verdict for the Southwestern Telegraph & Telephone Company, but submitted the case to the jury as to the Denison Light & Power Company. The jury returned a verdict in favor of the plaintiff for $12,000, upon which judgment was duly entered, and the Denison Light & Power Company nas appealed.

The evidence shows that on the 23d day of October, 1908, the Denison Light & Power Company was, and had been for a long time prior thereto, operating an electric light plant in the city of Denison, Tex., by means of poles and wires stretched thereon along and over various streets of said city, and that the Southwestern Telegraph & Telephone Company likewise operated a telephone plant in said city. At the corner of Hull street and Austin avenue stood a pole of the Denison Light & Power Company upon the cross-arms of which its wires were strung. This pole stood about midway between two poles of the telephone company, upon which two poles, and above the wires of the Denison Light & Power Company, the telephone company had a cable stretched with a number of telephone wires in it and attached to a messenger wire, which ran north and south. On the day and night of October 21, 1908, there was a heavy rain and electrical storm, and on the afternoon of the next day the appellee and two other employés of the telephone company, serving in the capacity of linemen, were sent out to locate and repair defects in its wires, which had been discovered to exist. When the corner of Hull street and Austin avenue was reached, the appellee observed a hole in the telephone company's cable about a foot and a half north of the light and power company's pole. Appellee climbed up the light and power company's pole and announced to his companions that the "trouble" they were hunting was there in the cable. The wires of the two companies at this point were in dangerous proximity to each other, and both companies had for some time permitted them to be and remain that way. Upon discovering that the hole in the cable had been burned, and with a view of removing the cable and the wires of the light company farther apart, appellee got a cross-arm belonging to the telephone company, and he and his companions attached it to the light company's pole near its top, put the cable and messenger wire on the top of the cross-arm, and thus raised them about 3½ feet above the top of the light company's pole. After raising the cable, they wrapped the burned place in it with oilcloth, and, it now being 5:30 o'clock, they quit work and left. As they left, O. P. Sammon, chief lineman of the light and power company, came up and observed the work appellee and his companions had done. On the next morning, October 23, 1908, appellee went back to the corner of Hull street and Austin avenue to continue and complete the work on the telephone company's cable, which had been begun the afternoon before. He testified, however, that before commencing his work he called up the gas plant operated by the appellant and asked the man who answered the call to go to the plant of the light company and ascertain whether the power was on on South Austin and Hull streets. The man reported that the engineer said there was no power on. He further testified that he had told the engineer of the light company, Brown, that he was going to work on the cable at the corner of Hull street and Austin avenue and not to turn on any power. Brown, the engineer of the light company, testified that appellee came by the plant on the morning of the 23d, and told him he was going to do some repair work at the corner of Hull and Austin streets, and asked if there was any current or power on that morning; that in reply to this question he (Brown) informed appellee that there would be no current on before 4 o'clock in the afternoon unless it was ordered by the company; that he would have to put on the power if he was directed to do so; that he might get orders to turn the current on from the lineman; and that he (Patton) would have to look to the office of the light company for an order to keep the current off. After this appellee went up the light company's pole, to which he had attached the cross-arm the evening before, and, with the assistance of another employé of the telephone company, swung a wooden platform, by means of straps hooked to the messenger wire supporting the cable, immediately un-

derneath the hole in the cable. Appellee then got upon the platform, sat down upon it with his feet hanging below, and began to work upon the cable. In a short while after he began to work, the engineer of the appellant, by the direction of O. P. Sammon, the chief lineman of appellant, turned the power, or electricity, on the wires immediately underneath the platform upon which appellee was sitting at work, and he received the shock causing the injuries of which he complains. At the time Sammon ordered the current of electricity, which injured the appellee, to be turned on, he was out in the residence circuit of the light company and was repairing a transformer, and, in order to know whether or not his work was complete and that the company's customers would have light that night, it was necessary to test the same by having the current of electricity turned on. And it was for this purpose that he ordered the engineer to turn the electricity on the wires. It does not appear that Sammon, before appellee was injured, knew of the conversation which had occurred between appellee and the engineer, Brown, or knew of the telephone message which appellee says he received from the engineer before starting to work. Neither does it appear that Sammon had actual knowledge of the fact that appellee and his companions were at work on the cable at the time he ordered the current of electricity turned on. The appellee, at the time he was injured, had been working for the telephone company as "trouble shooter" inspector, etc., for 3½ years and was an experienced lineman, and knew the danger of coming in contact with a wire charged with electricity. Just how the electric current was communicated to his body does not definitely appear. The platform upon which he was seated probably touched, while he was on it, the wires of the light company; but whether by reason of the dampness of the platform and its contact with the wires underneath, or whether by reason of appellee's feet, hands, or legs coming in contact with the live wire of the light company, he was caused to receive the shock resulting in his injury, is uncertain. That he did receive an electrical shock, however, from appellant's wires does not seem to be, and cannot well be, denied.

The court charged the jury as follows: "If you believe from the evidence that on the evening of October 22, 1908, plaintiff, with other linemen of said telephone company, found it necessary to repair a cable of the said telephone company at or near the corner of Hull street and Austin avenue; and if you further believe from the evidence that certain wires of the Denison Light & Power Company were in close proximity to the said cable at the place where said repairs were to be made, and had been in such close proximity for some time prior thereto, and that such condition at this place was known to the Denison Light & Power Company; and if you further believe from the evidence that on said afternoon certain work and temporary repairs were done upon said cable at said place; and if you further believe from the evidence that one Sammon, line foreman for the Denison Light & Power Company, on said afternoon saw the conditions of the various wires and cable at said place, and the work that said linemen had done; and if you further believe from the evidence that it reasonably appeared to said Sammon that the said linemen would probably return on the morning of the 23d to complete the repairs on said cable, and that said work would be attendant with grave danger to said linemen if a current of electricity were turned on to said wires at said place; and if you further believe from the evidence that on the morning of October 23, 1908, the said linemen returned to said place to complete the work on said cable, and that to do said work it was necessary to fasten a platform on the messenger wire that held up said cable, and that said platform was fastened to said messenger wire near to a pole of the Denison Light & Power Company; and if you further believe from the evidence that the plaintiff took his position on said platform and engaged in the work of repairing said cable, and, while he was so engaged in said work, the said Sammon ordered a current of electricity turned onto the electric light wires that were at said place, and that by reason thereof plaintiff received a shock of electricity from said wires into which said electricity had been so turned, and that from the effect of said shock plaintiff was caused to fall and slip to the ground and thereby injured, either by the said shock or fall, or both by said shock and fall; and if you further believe from the evidence that in causing said current of electricity to be turned into said wires at said time the said Denison Light & Power Company was guilty of negligence, that is, did that which a person of ordinary care and prudence, situated and circumstanced and with the knowledge you find from the evidence the said Sammon had on said occasion, would not have done, and that such negligence, if any, was the direct and proximate cause of plaintiff's injuries, if any— you will find for plaintiff and assess his damages as hereinafter directed, unless you should find for said Denison Light & Power Company under other instructions given you."

This charge embraces the only ground of negligence alleged, upon which the case was submitted and is assigned as error. The propositions are: (1) That no legal duty rests upon the owner of a property or business to exercise ordinary care in its use or conduct for the safety of intruders, trespassers, or bare licensees who without invitation or inducement, and solely for their own purposes and convenience and in the prosecution of their own business, make use of said property or interfere with said business; (2)

"the light company only owed the duty to Patton to refrain from wantonly or willfully injuring him"; (3) "the issue of the light company's liability as predicated upon Sammon's negligence as submitted to the jury in the charge was not made by the pleadings."

We are of the opinion that neither of these propositions should be sustained. The first two present practically the same legal question and do not correctly state the law of this state applicable to the facts. The evidence was not such as to authorize the trial court to treat appellee as only a trespasser, if indeed he was, at the time of his injury, trespassing upon or dealing with any property belonging to the appellant. For some years prior to the accident resulting in appellee's injury, the Denison Light & Power Company and the Southwestern Telegraph & Telephone Company, with equal right, so far as the record shows to the contrary, had maintained poles and wires at the corner of Hull street and Austin avenue. The telephone company had placed its wires in the cable upon which appellee was at work about 18 months or 2 years before appellee was injured, and both companies had permitted their respective wires to become and remain in dangerous proximity at this point for some time. In such close proximity were they at the place where appellee was injured that work could not be done, at least, by the servants of the telephone company upon its wires, with the wires of the respective companies in the position appellee found them, without coming in contact with appellant's wires, or running a great risk of doing so; and for this reason it seems the cable was raised higher above the wires of appellant, as shown by our conclusions of fact. That this dangerous proximity of the wires was, at least, well known to the appellant, is shown by the testimony of its vice principal, O. P. Sammon, and other employés. Sammon said: "At one time that I noticed the cable didn't clear the light wires and pole on Hull street and Austin more than six inches. On the 22d day of October it was lying right on the electric light wires. The cable hadn't fallen down on the electric light wire. It was just slacked. Being grounded, it caused the electric light wire to burn there." P. L. Brown, general foreman and engineer for appellant, testified: "They were so close at this place that employés of the telephone company could not work on its wires without coming in contact with the wires, pole, and cross-arms of the light and power company." To the same effect is the testimony of other witnesses. The testimony further shows that the wires of the two companies were not only in close proximity at the point where appellee was hurt, but also at various other places in the city of Denison. In addition to the testimony of P. L. Brown, quoted above, he said: "Yes, I know of numerous places where the wires and cables of the Southwestern Telegraph & Telephone Company were very close to the wires and cross-arms of the Denison Light & Power Company. Yes, I know of numerous places where the linemen of the Southwestern Telegraph & Telephone Company repairing its wires and cables would be compelled to come in contact with the wires of the Denison Light & Power Company and the cross-arms of said company, because the wires would be very close together. I know these things because I have seen the same with my eyes. One place where this existed was on Hull and Austin streets, or where Mr. Patton was hurt, and many others in the city of Denison." O. P. Sammon, from whose testimony we have quoted above, further testified: "We noticed several places where the cable was quite close to our wires. Then we went on around and noticed where the cable had come in contact with our wires on the corner of Hull and Austin. * * * We came back in the afternoon to the corner of Hull and Austin (streets), where this had been burned in two. When we got back there in the afternoon, * * * this upright piece had been placed on the pole. The telephone men (appellee and his companions) were just ready to start away. * * * I saw them. I saw Mr. Sloan and Mr. Patton and saw another man whose name I didn't know. They were just leaving there in a wagon. I knew they had been at that pole. I then climbed up that pole, went up on top, and mended a wire. I was up there right on top right next to where that extension was. I saw the cable in the groove up there. * * * The hole in the cable had been repaired temporarily, I suppose. They wrapped oilcloth around it to make temporary repairs." It further appears without contradiction that, in order to mend a defect in a telephone cable, it is necessary for the lineman to sit on a platform, such as appellee was using, suspended from the messenger wire to which the cable is attached, and that the platform must be suspended such a distance below the cable that the lineman can use the tools furnished him and do the necessary work on the cable and wires in it. The platform, in this instance, was suspended in the usual and necessary way, and appellee was upon it, when he received the shock of electricity, doing the work in which he was engaged in the customary manner. While C. D. Sloan, one of the telephone company's linemen, testified, "He (appellee) wasn't having any trouble up there with the light wires until he started down and stepped off the platform on the light pole," yet Sloan was on the ground below, when the accident occurred, and appellee, who, of all others, could better tell where he was when he received the shock, testified fully and unequivocally that he was at that time on the platform. There was a tarpaulin spread immediately above the platform, and appellee said: "I was under the tarpaulin when the electricity hit

me. I halloaed. I told them they had turned the power on me and to get me down or do something. * * * I had to hold to this steel messenger, and my feet were on the wet platform which is a ground. It was touching those wires."

It would seem that reasonable minds could hardly reach any other conclusion than that appellee received the shock, which resulted in his injuries, while on the platform of the telephone company which was suspended from the messenger wire of that company, and not while upon appellant's pole. If he received the shock while on the platform, then he was on the property of his employer in the discharge of a duty required of him, and not upon the "premises" of appellant in the character of a trespasser, unless it may be said that because the platform touched appellant's wires he was thereby trespassing. But appellant's agent, Sammon, who was authorized to speak and act for it in matters of this kind, knew the evening before appellee was injured that he had made use of appellant's pole to reach and repair the defect in the telephone cable; that the repairs done on that evening were temporary; and that in the very nature of things appellee and his companions would, in all probability, return the next morning to complete the work thus begun. He further knew, from his experience and knowledge of the character of work to be done, that a platform suspended above the wires of the light company, such as was used by appellee, would be used by him in that manner, and yet no objection or protest whatever, so far as the record shows, was made by him or any other agent of appellant, to the use that had been made of appellant's property, or of the use which reasonably could have been contemplated would be made of it the next day. Furthermore, the evidence was amply sufficient to justify the conclusion that the employés of the appellant and the telephone company used the poles of either company whenever necessary to repair breaks or defects in their wires, and this was done with the knowledge and permission or acquiescence of the owners. Everett, manager of the Denison Light & Power Company, among other things, testified, in substance, that the companies used each other's wires, and P. L. Brown, appellant's general foreman, said: "The employés of the Denison Light & Power Company used the poles of the Southwestern Telegraph & Telephone Company in doing repair work on its lines, and the employés of the Southwestern Telegraph & Telephone Company used the poles of the Denison Light & Power Company. * * * The said company frequently in the city of Denison prior to October 23, 1908, did use the same poles for their wires. It had been the practice or custom of said company ever since I began to work for them. I know these things because I have seen and noticed

it numbers of times and often talked to the linemen about it."

We think the testimony as a whole fairly shows that appellee, in making use of appellant's pole and in swinging the platform upon which he was sitting when injured so that it touched the wires of appellant underneath it, was not a trespasser, but was, at least, a licensee, and the appellant owed him the duty to exercise ordinary care not to injure him. The charge complained of, in effect, instructed the jury that such was the duty of appellant, and in it were correctly grouped the facts, the existence of which authorized a verdict in favor of the appellee. Under the facts and circumstances of this case, the appellant cannot escape liability on the ground that it only owed appellee the duty to refrain from wantonly or willfully injuring him, and that there was no evidence that they either wantonly or willfully injured him. Appellee was a licensee under such circumstances as required the exercise on appellant's part of ordinary care not to injure him. Railway v. Kent (Tex. Civ. App.) 124 S. W. 179; Illingsworth v. Boston Elec. Light Co., 161 Mass. 583, 37 N. E. 778, 25 L. R. A. 552; Newark Electric Light & Power Co. v. Henry M. Gardner, 78 Fed. 74, 23 C. C. A. 649, 37 L. R. A. 725. In the case last cited, it is held that "any person who engages in a highly dangerous occupation is bound to take such precaution in its pursuit as a sensible man would ordinarily take to avoid doing serious injury to one who comes upon his premises, not as a mere trespasser or wrongdoer, but for a purpose in itself lawful and which the owner has reason to believe may bring him there." It was further held, under the facts of that case, which are but little, if any, stronger than the facts of the case at bar for such a holding, that even upon the assumption that plaintiff's decedent was technically a trespasser the defendant owed him a duty of at least ordinary care. The following analogous cases may also be consulted: Standard Light & Power Co. v. Muncey, 33 Tex. Civ. App. 416, 76 S. W. 931; Dallas Electric Co. v. Mitchell, 33 Tex. Civ. App. 424, 76 S. W. 935; Hydraulic Works Co. v. Orr, 83 Pa. 332.

In reference to appellant's third proposition, it is sufficient to say that appellee's pleadings fully raised the issue of appellant's liability as predicated upon the negligence of O. P. Sammon, as submitted in the court's charge.

The second and third assignments are grouped and complain, respectively, of the court's refusal to give the following special charges:

(1) "In addition to the main charge, you are instructed that, as to the defendant the Denison Light & Power Company, the plaintiff was but a licensee, and that, when he went upon the defendant's pole at the corner of Hull and Austin streets and went to work

repairing the cable of the Southwestern Telegraph & Telephone Company in close proximity to the electric wires of the said Denison Light & Power Company, he assumed the risk of the situation and of all danger from contact with said electric wires and of danger from currents of electricity being turned upon the same any time by the said Denison Light & Power Company in the conduct of its business, and, assuming such risk, he cannot recover herein as against the Denison Light & Power Company."

(2) "In addition to the main charge, you are instructed that, as to the defendant the Denison Light & Power Company, the plaintiff was but a licensee, and the said Denison Light & Power Company owed him no duty other than to abstain from willfully and wantonly injuring him; and in this case, if you find from the evidence that the plaintiff was injured by a current of electricity from a wire or wires belonging to said defendant, the Denison Light & Power Company, at the corner of Hull and Austin streets in the city of Denison on the morning of October 23, 1908; and you further find that said current was turned on said wires by the order of O. P. Sammon, said defendant's chief lineman, and by the act of one Barnett, assistant engineer at the light plant, and that neither said Sammon at the time he gave the order, nor said Barnett at the time he turned on said current, knew that the plaintiff was working on the telephone wires at the corner of Hull and Austin streets in such close proximity to the electric wires of said defendants as to render contact with the same reasonable—you will find for the defendant the Denison Light & Power Company."

If it be conceded that the issue of assumed risk was in the case, then the first of these charges was properly refused, because, under the evidence, the court was not warranted in telling the jury, as appellant sought to have them instructed by the special charge, as a matter of law, that appellee, in going upon appellant's pole and to work repairing the cable of the telephone company, assumed the risk of the situation and of all danger from currents of electricity, etc., being turned on appellant's wires; and the second was properly refused, because it erroneously instructed the jury that appellee, being a licensee, the appellant owed him no duty other than to abstain from willfully and wantonly injuring him. As we have before stated, it was appellant's duty, under the circumstances of this case, to exercise ordinary care not to injure appellee, and to have given the charge in question, instructing the jury that appellant only owed him the duty to abstain from willfully or wantonly injuring him, would have been a positive misdirection in regard to the law and would have been highly calculated to mislead the jury to the appellee's prejudice. In this connection it may be stated that the issue of contributory negligence was submitted, and that neither the correctness of the charge nor the verdict of the jury upon that issue is assigned as error.

There was no error in permitting the plaintiff to read in evidence the deposition of the witness Brown, to the effect that frequently in the city of Denison prior to October 23, 1908, the appellant and the telephone company did use the same poles for wires, and that such had been the practice or custom since he began to work for them. Nor did the court err in permitting the witnesses Sloan and Sammon to testify to the effect that there were many places in the city of Denison, other than the place where appellee was injured, where the telephone company's wires were down close to the company's wires. This was pertinent testimony to meet the issue tendered by appellant that appellee was a trespasser upon its property, as it tended to show permission or acquiescence on the part of appellant in such use as appellee was making of its property at the time he was injured, and therefore owed him the duty of ordinary care not to send a strong current of electricity over its wires at a time when it might reasonably anticipate that the same would injure some employé of the telephone company.

It is also assigned that the court erred in refusing to permit the witness O. P. Sammon to answer the following question propounded to him by counsel for appellant: "In your opinion, had a man received a current of 200 volts without there being a mark, what would have been the effect on the man, as to the injury being permanent or serious? In your opinion, if it was not strong enough to make external evidence on the body, would it occasion death or permanent injury?" The bill of exceptions shows that this testimony was excluded on the ground that the witness had not qualified as an expert physician, and recites that, had the witness been permitted to answer the question, he would have testified that whenever a current of electricity, strong enough to do a permanent injury, comes in contact with the human body, it will burn and leave a mark on the body, and that in his opinion, where the body discloses no burns or marks, the current of electricity could not have been strong enough to effect a permanent injury. We think the court committed no reversible error in excluding this testimony. The answer of the witness to the question propounded would have been the opinion and conclusion of one who had not shown himself qualified to speak on the subject. His long experience in electrical work qualified him, no doubt, to say that a wire heavily charged with electricity coming in contact with the human body would leave evidence of the fact by a burn or mark; but to correctly say whether or not a person could be permanently injured

by a shock of electricity which did not manifest itself by a mark or burn upon the body by reason of its effects upon the mental, physical, and nervous structure of the person shocked, would, we think, require the knowledge of a medical expert. But, however this may be, the record shows that the witness Sammon was permitted to state very fully, so far as his knowledge extended, the effect of electrical shocks upon a human being, and, in view of his admitted testimony, the appellant suffered no substantial injury by the ruling complained of in this assignment.

Appellant charges that the verdict is excessive. We do not feel warranted in so holding. Neither the amount of the verdict, nor any other fact in the record, indicates to our mind that the verdict is the result of passion or prejudice or any other improper motive. At the time injured, appellee was only 25 years old. He was earning $60 per month, and had an expectancy of 38.81 years. He was strong and healthy; but, since the accident resulting in his injuries, he has been a confirmed invalid unable to work or to earn money. Dr. Rutledge says: "I never saw a man as nervous as he. He trembles all the time; suffers a great deal; hard for him to get about; trembles and shakes when he walks." He further says his conclusion is that the electrical shock spent its force on the cellular structure of the spinal cord; that his injuries are permanent; and that he will never be able to do any kind of physical labor again.

Assignments of error not discussed have been disposed of by what has been said in discussing other assignments, or disclose no reversible error, and are overruled.

The judgment of the court below is affirmed.

### On Motions for Rehearing and for Additional Conclusions of Fact.

Appellant requested additional findings of fact, and in deference thereto we make the following: The pole, cross-arms, and electric wires, at the corner of Hull and Austin streets, were the sole property of the Denison Light & Power Company. There was no defect in said pole, cross-arms, or electric wires of the Denison Light & Power Company. Patton made a groove in the top of the extension made to the telephone pole and placed the messenger wire of the telephone company, to which was suspended its cable, in said groove. He, with the assistance of a companion, had swung the platform from the messenger wire so that the same, when his weight was put upon it, rested on the light wires. The platform did not touch the light wires, however, until appellee got upon it. The telephone company had strung its cable after the light company had erected its pole and strung its light wires. The light company had no control or authority over the telephone company or its employés, and no power to direct the one in the disposition of its property or the other in their work. When Sammon, the lineman, telephoned the engineer to turn on the current, Brown, the engineer, was not present, and his assistant, one Barrett, answered the 'phone and turned on the current. Barrett was not present when Patton had notified Brown, the engineer, that morning, that he was going to work at the corner of Hull and Austin streets, and was ignorant of the fact that he was working there.

Except as above indicated, the motion for additional findings of fact is overruled.

The questions presented in the motion for a rehearing were carefully considered before the original opinion was written, and in our opinion correctly decided.

Said motion is therefore overruled.