## Wheeler *et al. versus* Rice *et al.*

1. Where the effect of an injunction would be to arrest a great public work, upon which there has been a very large expenditure of public money, a chancellor would require a case of the clearest abuse by the legislature of the high powers conferred upon it, before arresting work of such a character.

2. The facts in this case, *held* not to justify an injunction.

3. The Act of 8th April 1846 expressly forbids this court to exercise the power to grant injunctions in the case of works erected for the public use.

January 4th and 5th 1877. Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON and WOODWARD, JJ. WILLIAMS, J., absent.

Certificate from Nisi Prius ; Of January Term 1876, No. 11.

[Wheeler v. Rice.]

This was a bill in equity, brought June 10th 1871, by Charles Wheeler and others, citizens and tax-payers of Philadelphia county, for themselves and other citizens and tax-payers, against John Rice and others, who were the commissioners to erect the public buildings, to enjoin them from erecting the buildings and to have the act under which they were appointed (approved August 5th 1870, Pamph. L. 1871, p. 1548), declared unconstitutional and void. The bill averred that the act was unconstitutional and void for the following reasons :—

1. Because it included three distinct subjects, viz., the construction of public buildings on Penn or Washington squares ; the removal of buildings from Independence square and its dedication as a public walk and green for ever, and the contingent donation of Penn square to certain corporations ; one of said subjects—the second—not being mentioned in the title at all.

2. Because the legislature by said act unlawfully delegated to the qualified voters of the city, not merely the power to legislate as to the site of the public buildings, but also indirectly on the subject whether real estate of great value, which had for a long period been dedicated to public use, should be given away to certain private corporations.

3. Because the act gave away real estate to private corporations, which the legislature had no power to give away.

4. Because it is delegated to a board of commissioners, a body authorized to perpetuate itself for any number of years, without any further action of the legislature or election by the people, the power to make contracts, binding on the city, to an unlimited extent, and to compel the city to tax its citizens to meet them.

The bill further averred that the provisions of the act were so dependent upon and closely connected with each other that if one part of the act was void, the whole act must fall. It was admitted in the bill that work had already been begun on the buildings.

The defendants demurred to the bill : 1. Because the work which the plaintiffs sought to restrain was a public work, in progress of erection, under an act of the legislature. 2. Because the Act of 8th April 1846 (Pamph. L. 272) forbids the granting of injunctions by the courts of Philadelphia county against the erection of any public works in progress of erection under an act of the legislature, until the question of title and damages is submitted and finally decided by a common-law court. 3. Because the court had no jurisdiction to grant the relief prayed for.

Before the filing of the demurrer a motion for a preliminary injunction was made before Thompson, C. J., who refused the injunction upon the ground that the constitutionality of the act had, by the decision in Baird v. Rice, 13 P. F. Smith 489, become res adjudicata, and that under the Act of 8th April 1846, the

[Wheeler *v.* Rice.]

court had no jurisdiction over the case.   Upon this latter point the court said :—

"But even if * * * there were reasons sufficient to authorize an injunction to issue in ordinary cases, which I do not say is the case, the first and only section of the Act of 8th of April 1846 deprives me, I think, of jurisdiction to grant an injunction in this case.   It provides 'that no courts within the city and county of Philadelphia shall exercise the power of a court of chancery, in granting or continuing injunctions against the erection or use of any public works of any kind, erected or in progress of erection, under the authority of an act of the legislature, until the question of title and damages shall be submitted and finally decided by a common-law court; and in such cases the courts shall have authority to issue a venire for the summoning of a jury to the sheriff of an adjoining county.'

"It is admitted, as already remarked, in the plaintiffs' bill, that the work towards the erection of these buildings had been begun before filing the bill, and that fully accords with the affidavits of the defendants.   It matters not that comparatively little had been done.   The first stroke of the axe or the pick, with a view to the erection of the buildings, brings their case within the provisions of the act which forbids an injunction in the first instance.   It is obviously not the amount of the work done or progress made in the erection of the buildings which ousts the jurisdiction in chancery. It is, as the act plainly shows, the fact of being in progress of erection which is to have that effect : Wolbert *v.* The City, 12 Wright 439 ; Flanagan *v.* The City, a recent case before SHARSWOOD, J., at *nisi prius*, arising out of the Penrose Ferry bridge over the Schuylkill.

"The fact being found that work had been commenced towards the erection of the buildings authorized by the Act of 1870, before this bill was filed, it follows that no injunction can be granted to stop its progress until a resort has been had to a common-law court, as provided by the Act of 1846.   Till then jurisdiction in chancery is suspended, at least.   What may be done after that resort I am not prepared to say.

"For the wisdom of the legislation the courts are not responsible. *Ita lex scripta est* is a controlling maxim, and it must be obeyed. I confess myself at a loss to understand the purpose for which the Act of 1846 was passed, unless to prevent injunctions in every case of public buildings.   If it should turn out in any case, as it probably would in this, that no dispute about title or damages to be assessed would arise, would the proceedings fall or revert to equity juris-diction ?   This is one of the problems connected with the act which I am not able to solve, but which will not for that reason allow me to disregard the positive prohibition that 'no court in the city and county of Philadelphia shall exercise the power of a court of chan-

[Wheeler v. Rice.]

cery in granting injunctions against the erection of public works of any kind * * * until the questions of title and damages shall be submitted and finally decided by a common-law court.' This strikes down the power in chancery in this case. I can make nothing else of it. But I need not enlarge. I regard either of the foregoing reasons sufficient to prevent me from granting the preliminary injunction asked for in this case."

Afterwards the court dismissed the bill upon the demurrer and the plaintiffs then certified the case to the court in banc, assigning for error the refusal of the injunction and the dismissal of the bill.

*E. S. Miller*, for the appellants.—Baird v. Rice cannot, under the pleadings, affect this case.

The Act of 1846 only applies where public buildings are being erected under a valid Act of Assembly; here, we contend there is no valid act. It also only applies to cases where public works are being erected on *private property* under a valid act, and the owner seeks to enjoin the building before his damages are paid. The act is only declaratory of the law as laid down in Heston v. Canal Commissioners, Brightly 183.

The act contains three subjects, of which the first and third at least have no necessary connection with each other : Blood v. Mercelliott, 3 P. F. Smith 395 ; Baldwin v. The Mayor, &c., 42 Barb. 549 ; Pullman v. The Mayor, &c., 54 Id. 169 ; Wood v. The Mayor, &c., 34 Howard P. R. 500 ; Mosier v. Hilton, 15 Barb. 657 ; Fishkill Plank-road Co., 22 Id. 634.

The act contained a delegation of legislative power to the voters in regard to the disposition of Penn square, and was therefore void : Chenango Co. Bank v. Brown, 26 N. Y. 467 ; State v. Commissioners of Perry County, 5 Ohio St. 507 ; Barto v. Himrod, 8 N. Y. 483.

The act provides for giving away Penn square to private corporations; this even the legislature could not do : Le Clercq v. Trustees of Gallipolis, 7 Ohio 218; Barclay v. Howell's Lessees, 6 Pet. 507 ; New Orleans v. United States, 10 Id. 663 ; Commonwealth v. Alburger, 1 Whart. 469 ; Same v. Rush, 2 Harris 187 ; Warren v. The Mayor, 22 Iowa 351.

Where one part of an act is so necessarily connected with another that they manifestly form parts of a whole, and one is void, the other necessarily falls : Cooley's Cons. Lim. 177 ; Meshmeier v. State, 11 Ind. 484 ; State v. Commissioners, &c., *supra*.

*R. N. Willson* and *C. H. T Collis*, for the appellees.—Baird v. Rice, even if not technically a determination of the same question between the same parties, was a suit brought by parties bearing the same relation to the controversy as these plaintiffs, that of taxpayers.

[*Wheeler v. Rice.*]

The language of the Act of 1846 is too broad to admit of any exceptions; it applies to *all* public buildings in process of erection under an act of the legislature.

There is nothing in the Act of 1870 which may not fairly and without straining be referred to one general subject or purpose. " The subject was a compound one involving alternatives mutually dependent or consequential. The title expresses all the purposes of the act except one, which is directly consequential:" Cadwalader, J., in Leger *v.* Rice, 8 Philadelphia 167. The provisions as to Independence square need not therefore be referred to in the title: Dorsey's Appeal, 22 P. F. Smith 192; Blood *v.* Mercelliott, *supra;* Allegheny Co. Home's Appeal, 32 Leg. Int. 4; see also Neifing *v.* Pontiac, 56 Ill. 172; Prescott *v.* Chicago, 60 Id. 121; People *v.* Rochester, 50 N. Y. 525; McCaslin *v.* State, 44 Ind. 151.

Even if the provisions in regard to Penn and Independence squares ought to have been referred to in the title and are therefore void, the rest of the act stands: Allegheny Home's Appeal, *supra.*

The disposition of Penn square was not left to a vote of the people; the legislature merely provided for that in the event of Washington square being selected by the people as a site. But even admitting that the people were to vote upon the disposal of Penn square, such a course could be fully justified under Locke's Appeal, 22 P. F. Smith 491, and the cases there cited.

The act did not contemplate a gift of Penn square, but only of a right to occupy it, which is clearly within the power of the people to give: Kittaning Academy *v.* Brown, 5 Wright 269. Baird *v.* Rice shows that Penn square was intended for buildings, and under the case of City *v.* Am. Philos. Soc., 6 Wright 9, the purposes to which the square was contingently devoted by the legislature were sufficiently public to make such a use of the square proper, even though the legislature cannot authorize a sale of the property.

But the rest of the act may stand even though the part of it applying to Penn square is void: Cooley's Const. Lim. 178.

Finally, the mere possibility that the provision as to Penn square might have affected the minds of the voters (State *v.* Commissioners, *supra*), will not justify this court in setting aside the will of the legislature as to the main purpose of the act.

The judgment of the court was entered January 15th 1877,

PER CURIAM.—The decree by way of injunction is an exercise of high power; and when its effect is to arrest a great public work, especially after a very large expenditure of the public money, a chancellor would require a case of the clearest kind of abuse on the part of the representatives of the people of the high powers conferred upon them, before arresting a work of such a character. Added to this is the express legislation of 1846, to prevent the exercise of this high power in the case of works erected for the use of the

[Wheeler v. Rice.]

public. We do not perceive in this case, as presented to us, a state of the law or the facts demanding the exercise of this high power of injunction, and therefore have concluded to refuse it.

The decree of the Court of Nisi Prius dismissing the bill is therefore affirmed and the appellants are ordered to pay the costs.