## Gramlich *versus* Wurst *et al.*

1. Where the owner of land, in the exercise of lawful dominion over it, makes an excavation thereon which is such a distance from the public highway that the person falling into it would be a trespasser upon the land before reaching it, the owner is not liable for an injury thus sustained.

2. Where one is in the lawful occupancy of land and engaged in an employment that is entirely legitimate, in the absence of evidence to show exceptional hazard he is not required to provide exceptional safeguards.

3. An owner of land may improve it in his own time and in his own way, so that he violates no duty that he owes to any adjacent owner or to the public.

4. Where there is no conflict of testimony, and either the standard of individual duty has been judicially determined, or the rights of owners of property have been judicially defined, the decision of a question of negligence affecting individual action in the one case, or the exercise of dominion over property in the other, becomes the duty of the court. Negligence is to be found upon evidence, and is not to be presumed from the bare fact of the occurrence of an accident on a defendant's land.

5. Hydraulic Works *v.* Orr, 2 Norris 332, distinguished and affirmed.

January 10th 1878. Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON, WOODWARD and TRUNKEY, JJ.

[Gramlich *v.* Wurst.]

Error to the Court of Common Pleas, No. 2, of *Philadelphia county*: Of July Term 1877, No. 86.

Case by Mary Wurst, and others, the widow and minor children of John A. Wurst, against Frederick Gramlich, to recover damages for the death of said John A. Wurst, which plaintiffs alleged was occasioned by the negligence of defendant in not properly guarding an excavation, into which said Wurst fell and was killed.

The facts are fully stated in the opinion of this court.

At the trial before Mitchell, J., among other points, the defendant submitted the following:—

3. The place of this excavation being on private property, and not on any line of street or public highway, but some distance therefrom, and the said decedent (not being engaged in any manner whatever by the said defendant or his agents) had no right to be there, and was a trespasser, and the verdict should have been for the defendant.

The court refused the point, and charged the jury, inter alia, substantially as follows:—

"Now as to the defence, it is contended by defendant:—

"First. That there is no direct evidence how the accident happened, and therefore no sufficient evidence of defendant's negligence. In support of this view, defendant's counsel has called your attention to the fact that Wurst, when he fell in, was not on his route home from the place where he was last seen at work. His home was in another direction. Further, he was a trespasser on the lot where the excavation was, and had no legal right to be there at all.

"I instruct you that those facts do not absolutely prevent a recovery by the plaintiffs. A man is bound to exercise reasonable care even toward a trespasser. But these facts bear very strongly on the question of what was reasonable care on the part of defendant under the circumstances—in other words of his negligence, and also of the negligence of the deceased. A trespasser is bound to proceed with more care than where he has a right, and on the other hand, the defendant was not, in ordinary circumstances, bound to anticipate a trespass.

"Secondly. Has the plaintiff proved to your satisfaction, that under all the circumstances of the case, the defendant was guilty of negligence?"

[Here his honor reviewed the evidence as to the nature of the ground; the testimony for and against the existence of paths across the open lots, the habit of people to cross the lots, &c., and continued:]

"Now you are to judge from all this evidence whether the defendant was negligent in leaving his excavation without lights and without a fence, under the special circumstances of that night. There had been a serious accident, resulting in loss of life, and there was, according to all the testimony, a crowd of people about

[Gramlich *v.* Wurst.]

the place all the afternoon. This in itself would impose on the defendant more care in regard to his excavation than under ordinary circumstances; it increased the danger of injury to trespassers, as to whom, as I have already said, the defendant owed the duty of a reasonable care; not such degree of care as required as to people who should be habitually and lawfully there, but such as under all circumstances was reasonable to require even as to others.

" In judging of this care, however, the defendant is entitled to have you consider the facts that this was an extraordinary occurrence, such as he was not bound and in fact could not anticipate; that the street was not opened through for public travel; that the ground between the fallen ice-house and the edge of this excavation was not only steep and up-hill, but was also encumbered with piles of lumber and the debris of the fallen ice-house, so as to make it unlikely that any one would clamber over them from that direction, and in general the want of probability that any person would be injured by falling into his excavation.

" Lastly. You will consider the question whether the deceased was negligent in going towards the cellar on a dark and rainy night, &c."

The court then proceeded to state the law as to contributory negligence, and called the attention of the jury to the necessity of care on the part of Wurst, whether he knew the dangerous character of the locality, or, still more, if he was ignorant of the ground and ventured on it in the dark, and instructed them that if they believed him guilty of contributory negligence it would be a bar to a recovery. The verdict was for plaintiff for $4000, a remittitur for $1000 of which was subsequently filed by plaintiffs, and the defendant took this writ, assigning for error the refusal of the court to affirm his point.

*George W. Dedrick* and *David W. Sellers*, for plaintiff in error.—The deceased was in defendant's close without right or permission. The instruction of the court was, in effect, that defendant should have erected a fence around his property to keep off those who had no right to be there. We contend that the owner of private property owes no duty to a trespasser.

Injury to trespassers is without remedy, because property is not owned or used with any contemplation of them: Railroad Co. *v.* Hummell, 8 Wright 375; Mulherrin *v.* Railroad, 31 P. F. Smith 375. In Allen *v.* Willard, 7 P. F. Smith 374, the one injured was traversing the highway, adjoining which was the excavation.

*Walter J. Budd* and *John B. Devine*, for defendants in error, provided no paper book, but in their argument relied upon Hydraulic Works *v.* Orr, 2 Norris 332; Railroad *v.* Hummell, 8 Wright 375.

[Gramlich *v.* Wurst.]

Mr. Justice WOODWARD delivered the opinion of the court, January 28th 1878.

John Adam Wurst was killed by falling into a vault which Frederick Gramlich, the defendant below, was employed in exca-vating on a lot belonging to Adam Miller, on the east side of Thirty-first street, above Jefferson.   The work was done under a contract between Gramlich and Miller, and for the purposes of the contract Gramlich had exclusive possession of the lot.   Another person had fallen into the vault, and in approaching to aid him in response to his cries for help, it is probable that Wurst met with the accident that caused his death.   In falling his head struck the shaft of a cart that was in use in doing the work, and which had been left over night in the excavation.

It was after dark, on the evening of the 13th of February 1874, that the accident happened.   On the morning of that day the roof of an ice-house on a lot of Henry Miller, intervening between Adam Miller's land and Jefferson street, had broken down, and Wurst, who was a carpenter, had been at work at that building during the whole of the afternoon.   Michael Gossey, one of the witnesses for the plaintiffs, said he saw him about half-past three o'clock on the top of the brewery getting wood down, and Henry Miller said: "Wurst was there before I was, clearing off the roof.   It was a little after 12 o'clock when I arrived there.   As long as I stood there he was working there; he was there until after 7 o'clock.   He was hauling away timber; it was hauled to the north side, between my brewery and the vault Mr. Gramlich was digging."   There was an open space between Henry Miller's building and Adam Miller's line, and from the account which the plaintiffs gave of Wurst's employment during the day, the fact that the excavation was being made must have been known to him, and the situation of the vault when the work ceased that evening must have been within his view.   When he fell he was passing from the land of Henry Miller near the rear of Adam Miller's lot, and per-haps eighty feet eastwardly from the Thirty-first street front.

Under these facts—and all of them that are material are gath-ered from the testimony on behalf of the plaintiffs—what duty did Gramlich owe to Wurst ?   The contract for digging the vault was a perfectly lawful one, and it has not been alleged that the work was done otherwise than in the accustomed way.   It was all done within Adam Miller's lines.   No adjacent land was encroached upon, and no danger to passengers on any highway was created. Indeed, there was no highway to be involved in danger.   Thirty-first street, north of Jefferson, had only been opened along the pro-perty of Henry Miller, and the surface of Adam Miller's lot at the line of the street was from ten to fifteen feet above its estab-lished grade.   There was some conflicting testimony as to paths alleged to have traversed the lot, but if there were such paths, they

extended eastwardly or northeastwardly in the direction of a lamp-black factory, and it was not contested that Wurst fell into the vault as he approached it from the southern side.   The existence or non-existence of paths across the property was immaterial.

In the ordinary case, a jury must pass upon evidence given in support of a charge of negligence.   They must do this always when the measure of duty is ordinary and reasonable care, and the standard of the degree of care shifts with the change of circum-stances.   And they must do it also where essential facts are con-troverted.   But where there is no conflict of testimony, and either the standard of individual duty has been judicially determined, or the rights of owners of property have been judicially defined, the decision of a question of negligence affecting individual action in the one case, or the exercise of dominion over property in the other, becomes the duty of a court.   Negligence is to be found upon evidence, and is not to be presumed from the bare fact of the occurrence of an accident on a defendant's land.   Gramlich was in the lawful occupancy of the lot on which Wurst was killed, and was engaged in an employment that was entirely legitimate.   In the absence of evidence to show the existence of exceptional haz-ards, he was not required to provide exceptional safeguards. .  An owner of land may improve it in his own time and in his own way, so that he violates no duty that he owes to any adjacent owner or to the public.   A case as old as Blyth *v.* Topham, Cro. Jac. 158, held that " an action doth not lie if a man makes a ditch in his waste, which lies near the highway, into which the horse of another falls ; for the ditch in his own soil was no wrong to the other, but it was his fault that his horse escaped into the waste."   Where A., who was the owner of a storehouse and lot left at the rear of the storehouse an excavation walled up to give light to the cellar, and B., · who, on an alarm of fire went down to the storehouse, adjoining the house in which the fire was, and enter-ing at the front door, went through the store, and going through the back door, turned off the gangway across the opening and fell in and was injured, it was held that the digging of an open space in the rear of the storehouse by A., upon his own ground, was a lawful act by him, and he had the right to keep it there as an appurtenant right for the use of his property, and B. falling in by accident, the same not being near a public street or·crossing, gave no right to recover damages from A. as a wrongdoer, and B., going there on account of the fire, did not change the rule : Kohn *v.* Lovett, 44 Ga. 251.   The law fully recognises the right of him who, having the dominion of the soil, without malice does. a lawful act on his own premises, and leaves the consequences of an act thereby happening where they belong, upon him who has wandered out of his way, though he may have been guilty of no negligence in the ordinary acceptation of the term.   It is purely *damnum*

[Gramlich *v.* Wurst.]

*absque injuria:* Morgan *v.* City of Hallowell, 57 Me. 377. " When an excavation is made adjoining to a public way, so that a person walking on it might, by making a false step, or being affected with sudden giddiness, fall into it, it is reasonable that the person making such excavation should be liable for the consequences. But when the excavation is made at some distance from the way, and the person falling into it would be a trespasser upon the defendant's land before he reached it, the case seems to me to be different :" Martin, B., in Hardcastle *v.* The South Yorkshire Railway Co., 4 Hurl. & N. 67. So where the defendants were owners of waste land which was bounded by two highways, and they worked a quarry in the waste, and the plaintiff, not knowing of the quarry, passed over the waste in the dark and fell into the quarry and broke his leg, and then brought an action for the injury, it was held that the action could not be maintained, as there was no legal obligation in the defendants to fence the quarry for the benefit of the plaintiff, who was a mere trespasser on the land : Hounsell *v.* Smith, 7 C. B. N. S. 731. This rule was laid down by Chief Justice GIBSON in Knight *v.* Abert, 6 Barr 472, which decided that though no action lies in Pennsylvania for trespass by cattle pasturing on unenclosed woodland, yet that, not being a matter of right, the owner of the land is not liable for injury sustained by such cattle falling into a hole dug by him within the boundaries of his land, and left unenclosed. And the opinions of Mr. Justice STRONG in The Philadelphia and Reading Railroad Co. *v.* Hummel, 8 Wright 378, and of Mr. Justice SHARSWOOD, in Gillis *v.* The Pennsylvania Railroad Co., 9 P. F. Smith 129, illustrated and enforced substantially the same rule.

Reliance has been placed on the case of the Hydraulic Works *v.* Orr, 2 Norris 332, to support this judgment. The distinction between that case and this is marked and obvious. There the accident happened in a private passage or cartway adjoining a factory, where several kinds of business were carried on in different stories, and was caused by the falling of a heavy platform employed as an inclined plane to move heavy articles into and out of the building. When used it was lowered so as to cover the pavement of the cartway. When not in use, it was raised on hinges that connected one side of it within eighteen inches of the wall, was not fastened at the upper side, and was so nearly at equipoise that slight force only was required to draw it down. The cartway opened from a public street, where people were constantly passing and children were often at play. There was a gate at the street end, and this was frequently left open. It was so left at the time of the accident, when four children intruded into the cartway, and their thoughtless tampering with the platform resulted in drawing it down upon themselves, and in producing injury to the child of the plaintiffs from which he died. This court affirmed a verdict

[Gramlich *v.* Wurst.]

and judgment for damages in the Common Pleas. No cause was ever more justly decided. It was the case suggested by Baron Martin in Hardcastle *v.* The South Yorkshire Railway Company, of a dangerous appliance adjoining a public way. The children were trespassers certainly, but then they were children, and the defendants were bound to have regard to the reckless and thoughtless tastes and traits of childhood. The entrance to the cartway was open and unguarded, and the facts in the record showed the strong probability of danger from the structure. It had once fallen against the wheels of a wagon, and when other wagons passed it was held up by hand. Even a trespasser may have redress for negligent injuries inflicted on him. Though he is liable to an action for his own wrong, he does not necessarily forfeit his right of action for injuries he has sustained, as, for example, by falling into a hole newly excavated on a defendant's premises adjoining a public way, and rendering it unsafe to persons lawfully using the same with ordinary care : Barnes *v.* Ward, 9 C. B. 392, 420. The owner of open land has no right to plant in it spring guns by which ordinary trespassers may be wounded : State *v.* Moore, 31 Conn. 479. In this country, while a house may be thus protected from burglars, no man has a right to place on his land any instruments to injure persons merely straying on such land : Johnson *v.* Patterson, 14 Conn. 1. A party may be acting in violation of some particular statute and still be under the general protection of the law : Spofford *v.* Harlow, 3 Allen 176. The Hydraulic Works *v.* Orr rested on principles and precedents that sustained it amply, but which have no application here. The undisputed facts proved the defendant to have been guiltless of all wrong, and the prayer for instruction to the jury that he was entitled to a verdict should have been granted.                                                    Judgment reversed.

86      80
f 205   ²209
205     ¹218

86      80
f 25 SC ¹³336
25 SC ¹⁶608

86      80
f 34 SC ¹188

86    80
227  1 25