Thompson *v.* Baltimore & Ohio Railroad Company, Appellant.

*Negligence—Railroads—Infant—Turntable—Use of land by owner.*

In an action against a railroad company to recover damages for personal injuries to a boy eight years of age, it appeared that the defendant maintained a large train yard, used for shifting and storage of cars, and the receipt and delivery of freight, in close proximity to a thickly populated section of a city. Ten or twelve feet from an entrance to the yard from a public street there was a turntable which was not kept locked when not in use, but was fastened by a brake, that anyone could open. A high board fence surrounded the yard, but in places it was broken and the gates were usually open. Little or no effort was made to exclude the public from the yard, and at times it was used by persons residing in the vicinity, as a playground. Plaintiff entered the yard at night through an open gateway, and while standing near the turntable with which some children were at the time playing, was struck by a projecting bar which they used in turning it, and was thrown into the pit and caught between the wall and the turntable. *Held*, that plaintiff could not recover.

The law fully recognizes the right of him, who, having dominion of the soil, without malice, does a lawful act on his own premises, and leaves the consequences of an act thereby happening where they belong, upon him who has wandered out of his way, though he may have been guilty of no negligence in the ordinary acceptation of the term; and the fact that the person injured is a child, makes no difference, unless there is negligence.

An owner of land who makes changes on it in the course of its beneficial use, which tend to attract children, and to expose them to danger, is under no duty to take special precautions for their safety.

Mr. Justice MESTREZAT dissents.

Argued Jan. 11, 1907. Appeals, Nos. 256 and 257, Jan. T., 1906, by defendant, from judgment of C. P. No. 4, Phila. Co., March T., 1905, No. 2,135, on verdict for plaintiffs in case of Henry E. Thompson, by his father and next friend, Edward H.

Thompson, and Edward H. Thompson, in his own right, v. Baltimore & Ohio Railroad Company. Before MITCHELL, C. J., FELL, BROWN, MESTREZAT, POTTER, ELKIN and STEWART, JJ.  Reversed.

Trespass to recover damages for personal injuries to a boy eight years old.  Before AUDENRIED, J.

The facts are stated in the opinion of the Supreme Court.

Verdict and judgment for plaintiffs for $2,500.

*Error assigned* was in refusing binding instructions for defendant.

*W. B. Linn*, for appellant.—The defendant was not liable: Gillis v. R. R. Co., 59 Pa. 129 ; Duff v. R. R. Co., 91 Pa. 458 ; Flower v. R. R. Co., 69 Pa. 210 ; R. R. Co. v. Lewis, 79 Pa. 33 ; Gramlich v. Wurst, 86 Pa. 74 ; Gillespie v. McGowan, 100 Pa. 144 ; B. & O. R. R. Co. v. Schwindling, 101 Pa. 258 ; P. & R. R. R. Co. v. Heil, 5 W. N. C. 91 ; Rodgers v. Lees, 140 Pa. 475.

The turntable decisions permitting recovery are both curious and anomalous ; some assume that there is a standard of duty, as we understand them, requiring a railroad company to keep a turntable at its peril ; others require the jury to decide whether a turntable is likely to prove "attractive" and "alluring" to children, permitting the jury to cast the defendant in damages upon an affirmative finding of that fact ; still other courts frankly state that an exception to the general rule of liability governing ownership of property must and should be made in turntable cases: Walker v. R. R. Co., 53 S. E. Repr. 113.

Two cases decided in New Jersey a day apart, D., L. & W. R. R. Co. v. Reich, 61 N. J. L. 635 (40 Atl. Repr. 682), a case in the court of errors and appeals, and Turess v. R. R. Co., 61 N. J. L. 314 (40 Atl. Repr. 614), considered both sides of the matter and adopted the rule contended for at bar.

*Chester N. Farr, Jr.*, with him *John J. McDevitt, Jr.*, for appellees :—The fact that the child is a trespasser is immaterial if the accessibility of the property is such that the at-

tractive and dangerous object is situated so near the highway as to charge the owner with the duty of recognizing the fact that children may be tempted to play with it: Rachmel v. Clark, 205 Pa. 314; Duffy v. Sable Iron Works, 210 Pa. 326; Kreiner v. Straubmuller, 30 Pa. Superior Ct. 609; Hydraulic Works Co. v. Orr, 83 Pa. 332.

The injury to the plaintiff was the natural and probable consequence of the defendant's act.

The turntable decisions fully support appellee's position: Barrett v. Southern Pac. Co., 91 Cal. 296 (27 Pac. Repr. 666); R. R. Co. v. Stout, 84 U. S. 657.

Following is a list of other cases decided in the United States supporting a liability on the part of railroad companies for children injured by playing upon turntables: Alabama G. S. R. Co. v. Crocker, 131 Ala. 584 (31 So. Repr. 561); Ferguson v. Columbus, etc., Ry. Co., 77 Ga. 102; Chicago, etc., R. Co. v. Fox, 70 N. E. Repr. 81; Kansas Cent. Ry. Co. v. Fitzsimmons, 22 Kan. 686; Keffe v. Milwaukee, etc., R. Co., 21 Minn. 207; Twist v. Winona, etc., R. Co., 30 Minn. 164 (39 N. W. Repr. 402); Nagel v. Missouri Pac. Ry. Co., 75 Mo. 653; Chicago, etc., R. Co. v. Krayenbuhl, 65 Neb. 889 (91 N. W. Repr. 880); East Tennessee, etc., R. Co. v. Cargille, 105 Tenn. 628 (59 S. W. Repr. 141); Ft. Worth, etc., R. Co. v. Robertson, 14 L. R. A. 781; Gulf, etc., R. Co. v. Styron, 66 Tex. 421 (1 S. W. Repr. 161); San Antonio, etc., R. Co. v. Skidmore, 27 Tex. Civ. App. 329 (65 S. W. Repr. 215); Ilwaco Ry., etc., Co. v. Hedrick, 1 Wash. 446 (25 Pac. Repr. 335).

OPINION BY MR. JUSTICE FELL, June 4, 1907:

The defendant maintained a large train yard, used for the shifting and storage of cars and the receipt and delivery of freight, in close proximity to a thickly populated section of the city of Philadelphia. Ten or twelve feet from an entrance to the yard from a public street there was a turntable which was not kept locked when not in use but was fastened by a brake that anyone could open. A high board fence surrounded the yard but in places it was broken and the gates were usually open. Little or no effort appears to have been made to exclude the public from the yard and at times it was used by persons residing in the vicinity as a playground. One of the

plaintiffs, a boy not quite eight years of age, entered the yard at night through an open gateway, and while standing near the turntable, with which some children were at the time playing, was struck by a projecting bar which they used in turning it, and was thrown into the pit and caught between the wall and the turntable.

The principles that fix the relation between a landowner and a person entering on the land without permission were fully considered in Gillis v. Railroad Co., 59 Pa. 129, a case in which the plaintiff was injured by the breaking down of a station platform on which he was standing, from mere curiosity, to witness the approach of a train. It was there held that the permissive use of the platform by persons not having business with the company, imposed on it no liability for defects in construction, and that a person using the private property of another, by permission or sufferance, takes upon himself the risks incident to it. It was said in the opinion by SHARS-WOOD, J.: "It will appear on an examination of the interesting and elaborate discussions in the English courts of the question whether an action could be supported by such trespasser for personal harm occasioned by the spring-gun, mantrap, or dog-spike, set on the grounds of the defendant, in which it was determined that where there was no proper warning given, such an action well lies; that it rested mainly on the ground that a man cannot lawfully do indirectly that which it is unlawful for him to do directly. He cannot shoot or maim or set a ferocious dog upon a mere trespasser. He shall not there place a concealed machine where it will be likely to do the same thing, or let such a dog loose in his grounds without warning: Deane v. Clayton, 7 Taunt. 489; Ilott v. Wilkes, 3 B. & Ald. 304; Bird v. Holbrook, 4 Bing. 628. ' It is, however, equally well settled that the owner of property is not liable to a trespasser, or to one who is on it by mere permission or sufferance, for negligence of himself or servants or for that which would be a public nuisance if it were in a public street or common where all persons have a legal right to be without question as to their purpose or business."

In Gramlich v. Wurst, 86 Pa. 74, a contractor, who was in exclusive possession of land for the purpose of carrying out his contract, had caused an excavation to be made and had

left it unguarded at night. A person crossing the land fell into the excavation and was killed. In the opinion denying the right to recover it was said: " The law fully recognizes the right of him, who, having dominion of the soil, without malice does a lawful act on his own premises and leaves the consequences of an act thereby happening where they belong, upon him who has wandered out of his way, though he may have been guilty of no negligence in the ordinary acceptation of the term." In Gillespie v. McGowan, 100 Pa. 144, a child under eight years of age was drowned in an abandoned well, eighty feet from a city highway, in an uninclosed lot which was a place of resort in hot weather. The instruction to the jury that " The true principle which must be applied to a case of this kind is this: the owner of premises in the neighborhood of a populous city, and opening on a public highway, must so use them as to protect those who stray upon them," was expressly disapproved and the judgment for the plaintiff was reversed. In Baltimore & Ohio Railroad Co. v. Schwindling, 101 Pa. 258, a boy under six years of age went, for his own amusement, on the platform of a railroad station to observe an approaching train and was struck by an iron step which was bent and projected a few inches from the car. A judgment for the plaintiff was reversed on the ground that the company owed him no duty of protection under the circumstances. This principle has been applied in a variety of cases of trespass by children. In Rodgers v. Lees, 140 Pa. 475, it was applied in a case where a child took hold of a chain which was a part of a hoisting apparatus and was over a sidewalk outside of the building line; in Moore v. Railroad Co., 99 Pa. 301, where a boy was walking along the tracks of a railroad on the outer ends of the sleepers and was injured by a passing train; in Oil City, etc., Bridge Co. v. Jackson, 114 Pa. 321, where a boy in crossing a bridge walked on a gas pipe five inches in diameter and fell through an opening in the floor.

Of Hydraulic Works Co. v. Orr, 83 Pa. 332, relied on by the plaintiffs, it has often been said that it is authority for its own facts and, as far as it appears to sanction the doctrine that a child cannot be treated as a trespasser, it has been expressly overruled: see Gillespie v. McGowan, 100 Pa. 144, and Rodgers v. Lees, 140 Pa. 475. In the first of these cases it

was said: " In Hydraulic Works Co. v. Orr, there was a reck-
lessness that may be said to partake of the nature of wanton-
ness and it is only upon this principle that judgment can be
logically sustained." In Duffy v. Sable Iron Works, 210 Pa.
326, an open vat, into which hot tar and grease were run, had
been placed in an open space so near the line of the street that
a child might unconsciously walk into it. In Rachmel v. Clark,
205 Pa. 314, the defendants had used for storage the sidewalk
of a street in connection with an open paved space in front of
their building, separated from the street only by an imaginary
line. The negligence was in placing on a public way, where
all persons had a right to be, a slab of slate in such a position
that the touch of a child's hand would cause it to fall.

The fact that the person injured was a child makes no dif-
ference unless there was negligence. The plaintiff's youth re-
lieves him of the charge of contributory negligence but it does
not give rise to an imputation of negligence on the part of the
defendant. He was where he had no right to be, on the prop-
erty of the defendant, which it was using in a lawful manner
for a lawful purpose in the conduct of its business. It owed
him the duty not to injure him intentionally but it was under
no duty actively to take care of him either by keeping him
out of the yard or by protecting him after he had entered it
from his own acts or the acts of others who, like him, had en-
tered without permission. There was no negligence unless
there was breach of duty. There was no breach of a duty
owing an adult. An owner of land is not liable for its condi-
tion to an adult who enters without permission. Unless a dif-
ferent standard of duty is to be established as to a child, there
was no liability in this case.

Whether an owner of land who makes changes on it in the
course of its beneficial use, which tend to attract children and
to expose them to danger, is under a duty to take special precau-
tions for their safety, is a question on which there is a conflict
of authority. That such a duty exists has been asserted in
some jurisdictions and denied in others. The earlier cases on
the subject followed Railroad Co. v. Stout, 84 U. S. 657, but
the tendency of the later decisions is decidedly against the
imposition of such a duty; some of the courts that adopted
the ruling in Railroad Co. v. Stout, have since repudiated it

and others have followed it with hesitation or have limited its application to a particular class of improvements.

The establishment of such a duty would create a restraint, which in some cases would amount to a prohibition, upon a mode of beneficial use of land, for the protection of intruders and intermeddlers. It is difficult to see any ground upon which such a duty can be placed. An owner is not liable for leaving his land in its natural shape. Why should he be held liable for placing structures upon it which are harmless in themselves and are necessary for the lawful use he wishes to make of it? It cannot be said that he invites or allures children because no such intention in fact exists, nor that he sets a trap for the innocent and unwary. The law does not impose a duty upon the landowner to take special precautions for a class of persons, a doctrine which, if carried to its logical conclusion, would, as was said in Gillespie v. McGowan, 100 Pa. 144, "Charge the duty of the protection of children upon every member of the community except their parents." In D., L. & W. Railroad Co. v. Reich, 61 N. J. L. 635, it was said by GUMMERE, J.: "The viciousness of the reasoning which fixes the liability on the landowner because the child is attracted lies in the assumption that what operates as a temptation to a person of immature mind is, in effect, an invitation. Such an assumption is unwarranted."

If the standard of duty contended for is set up, it will be an exception to the general rule and a wide and dangerous extension of the liability governing the ownership of property; where it would logically end it is difficult to determine. As was suggested in Gillespie v. McGowan, 100 Pa. 144, it might make it "the duty of the owner of a fruit tree to cut it down because a boy trespasser may possibly fall from its branches." In the opinion in Turess v. Railroad Co., 61 N. J. Law, 314, it was said by MAGIE, C. J.: "It is obvious that the principle on which the rule rests, if sound, must be applicable more widely than merely to railroad companies and the turntables maintained by them. It would require a similar rule to be applied to all owners and occupiers of land in respect to any structure, machinery or implement maintained by them thereon, which possesses a like attractiveness and furnishes a like temptation to young children. He who erects a tower capable of

being climbed, and maintains thereon a windmill to pump water to his buildings; he who leaves his mowing machine or dangerous agricultural implements in his field after his day's work; he who maintains a pond in which boys may swim in summer and on which they may skate in winter,— would seem to be amenable to this rule of duty."

The doctrine of the so-called turntable cases has been disapproved in Walsh v. Railroad Co., 145 N. Y. 301; Walker's Adm'r v. Railroad Co., 53 S. E. Repr. 113; Railroad Co. v. Reich, 61 N. J. Law, 635; Daniels v. Railroad Co., 154 Mass. 349; Frost v. Railroad Co., 64 N. H. 220; Paolino v. McKendall, 24 R. I. 432, 53 Atl. Repr. 268; Ryan v. Towar, 128 Mich. 463, 55 L. R. A. 310; Dobbins v. Railway Co., 91 Texas, 60; Ritz v. Wheeling, 45 W. Va. 262, and in many other cases. The doctrine is a sweeping innovation on the settled common-law rule that a landowner is not liable for the condition of his premises to one who enters them without permission. We are of opinion that it is not sound in principle and that it cannot be sustained.

The judgment is reversed and judgment is now entered for the defendant.

MESTREZAT, J., dissenting:

Few, if any, more important cases have been considered and determined than the one now presented for the decision of this court. Especially is the doctrine announced far reaching and important to the multitude of people who live in the congested districts of the cities of the commonwealth. It takes from them a protection which has heretofore been accorded in all jurisdictions where the life of a child is of greater importance than any commercial interest. It completely destroys the maxim sic utere tuo ut alienum non lædas, which for centuries has protected the weak against the strong, the homes of the humblest against the encroachments of the highest. It gives to an individual or a corporation the right to erect upon his premises in the most densely populated part of the city of Philadelphia any machine or structure whatever which he deems necessary for carrying on his business, although such machine or structure may be so placed as to menace the life of every child in the neighborhood. It

establishes a principle, as I conceive, unsupported by reason, unsustained by the best judicial thought of this country, and one so appalling that sooner or later if enforced by this court must result in legislative action.   It cannot be that the people of this commonwealth will submit to a doctrine that declares that a child whose tender years deprive him of protection becomes a trespasser and without the pale of the law when he is attracted to the premises of another by an object, erected thereon by the owner, which appeals to the childish instinct and by which he is injured or killed.

The question involved in this case is not a new one either here or in many other jurisdictions.   It is attempted in the opinion to show that the principle announced by the majority of the court is the law in many jurisdictions, including our own, and that the contrary doctrine is a sweeping innovation on the settled common-law rule that a landowner is not liable for the condition of his premises to one who enters without permission.   I do not agree with either of these conclusions. On the contrary, while the right of the child to be protected under the circumstances of this case has been attacked, yet with deference I submit that the weight of judicial decisions and of text-book authority is overwhelmingly against the doctrine announced in the majority opinion.

A half century ago this court in the case of Rauch v. Lloyd, 31 Pa. 358, approved the principle announced in the leading English case of Lynch v. Nurdin, 1 Q. B. 29, and refused to follow the contrary doctrine adopted in New York and one or two other states.   Mr. Justice WOODWARD speaking for the court said (p. 370): " But, that the same rule should not be applied to a child of tender years was so successfully demonstrated by Lord Denman in Lynch v. Nurdin, 6 Ad. & E. 30, and by Chief Justice Redfield in Robinson v. Cone, 22 Vt. 213, that I shall content myself with referring to their reasonings.   Nor am I unmindful of the counter current of authorities in New York, but the preponderance of both reason and authority will be found favorable to the two adjudications first named.   Every case is to be determined by its own circumstances, and that children are to be held responsible only for the discretion of children seems self-evident propositions.   A blind man is not bound to see, a deaf man to hear,

nor a lunatic to reason ; and yet they have a right to redress for injuries inflicted by the negligence of others.   Children of tender age are not responsible to the law either criminally or civilly ; and that for want of discretion."   It was there held that where a child of tender years attempted to pass under a train of railroad cars, negligently left standing on the crossing of a public street and by which he was injured, the owners of the cars were liable, but under similar circumstances they would not have been liable if an adult had been injured. In Gillis v. Pennsylvania R. R. Co., 59 Pa. 129, relied on to sustain the position of the majority of the court in the present case, Mr. Justice SHARSWOOD, delivering the opinion, declared the doctrine of Lynch v. Nurdin still to be the law, saying (p. 142) : " No reference is made in the opinion (he referred to) to Lynch v. Nurdin, 1 Q. B. 29, a decision much controverted, but one which has stood its ground."

In Hydraulic Works Co. v. Orr, 83 Pa. 332, a child six years old, while at play, strayed from the street through an open gate into an alley and was killed by a falling platform twenty-four feet from the street, which was raised and lowered in receiving and shipping goods.   At the entrance to the alley where it abutted on the street was a gate which was posted " Private " and " No admittance."   The gate was frequently open, although the employees of the factory which adjoined the alley were instructed to keep it shut.   The father and mother of the child brought an action to recover damages for his death on the ground that the defendant was guilty of negligence in respect to the condition or character of the platform and in not keeping the gate fronting on the street closed. There was a verdict and judgment for the plaintiffs which were sustained by this court.   It was there held, in the language of the syllabus, that while it is true, in general, that where no duty is owed no liability arises, this rule varies with circumstances, and where, therefore, an owner has reason to apprehend danger from the peculiar situation of his property and its openness to accident, the question of duty then becomes one for a jury, to be determined upon all its facts of the probability of danger and the grossness of the act of imputed negligence.   Chief Justice AGNEW delivered the opinion and in part said (p. 336) : " Now, can it be righteously said

that the owner of such a dangerous trap, held by no fastening, so liable to drop, so near a public thoroughfare, so often open and exposed to the entries of persons on business, by accident, or from curiosity, owes no duty to those who will be probably there ? The common feeling of mankind, as well as the maxim sic utere tuo ut alienum non lædas, must say this cannot be true—that this spot is not so private and secluded as that a man may keep dangerous pits or deadfalls there without a breach of duty to society. On the contrary, the mind, impelled by the instincts of the heart, sees at once that in such a place, and under these circumstances, he had good reason to expect that one day or other some one, probably a thoughtless boy in the buoyancy of play, would be led there, and injury would follow—especially, too, when prompted by knowledge that a fastening was needed. Perhaps the best monitor in such a case is the conscience of one who feels, in his dreadful recollection, the crushing sense that he had left such an engine of ill to take the life of an innocent child." Mr. Justice Paxson disagreed with the views expressed in the opinion of the chief justice and noted his dissent on the record.

Hydraulic Works v. Orr has been followed and approved by this court in all the cases on the subject, if we except some dicta used in the opinions in one or two cases. In Gramlich v. Wurst, 86 Pa. 74, Mr. Justice Woodward, delivering the opinion and speaking of Hydraulic Works Co. v. Orr, says (p. 80) : " No cause was ever more justly decided. It was the case suggested by Baron Martin in Hardcastle v. The South Yorkshire Railway Co., of a dangerous appliance adjoining a public way. The children were trespassers certainly, but then they were children, and the defendants were bound to have regard for the reckless and thoughtless traits of childhood. . . . Even a trespasser may have redress for negligent injuries inflicted upon him. . . . The Hydraulic Works Co. v. Orr rested on principles and precedents that sustained it amply, but which have no application here." Schilling v. Abernethy, 112 Pa. 437, quotes from and follows Hydraulic Works v. Orr. Mr. Justice Gordon, delivering the opinion, said (p. 442) : " We there held (Hydraulic Works Co. v. Orr) that circumstances may beget duties which under ordinary circumstances cannot be implied, and that when such circumstances are shown to

exist, the question arising therefrom is not for the court, but for the jury. . . . Whether, then, the owner of these premises (in the case being decided), under the circumstances made apparent by the evidence, was or was not justified in maintaining such a deadfall as this bowing wall along the side of this passageway was surely a question for the jury, and one that could not lawfully have been withdrawn from the consideration of that body." In Biddle v. Railway Company, 112 Pa. 551, Hydraulic Works Co. v. Orr is quoted with approval in the opinion which concludes as follows (p. 554) : " It is very true extra precautions are not required in anticipation of the intrusions of trespassers, even though they be children, but when they do so intrude and are known to be in an improper place, they must not be so wholly neglected as to endanger their lives or limbs. Any other doctrine would so illy accord with Christian civilization as to render its maintenance impossible."

In Arnold v. Pennsylvania Railroad Company, 115 Pa. 135, the Sioux City & Pacific Railroad Company v. Stout, 84 U. S. 657, the first of the turntable cases, is cited with approval and the principle there decided is stated in the following quotation (p. 140) : " Whilst a railway company is not bound to the same degree of care in regard to mere strangers who are unlawfully upon its premises that it owes to a passenger, it is nevertheless not exempt from responsibility to such strangers for injuries arising from its negligence or from its tortious acts." The opinion of this court then continues : " This same doctrine has been approved by our own authorities, inter alia, in the cases of the Pennsylvania Company v. Toomey, 91 Pa. 256 ; Pennsylvania Railroad Company v. Lewis, 79 Pa. 33 ; Hydraulic Works Company v. Orr, 83 Pa. 332 ; Phila. & Reading Railroad Company v. Hummell, 44 Pa. 375, and Biddle v. Railway Company, 112 Pa. 551." In Corbin v. Philadelphia, 195 Pa. 461, decided in 1900, Hydraulic Works Co. v. Orr is cited with approval, and Mr. Justice BROWN speaking for the court quotes two-thirds of the opinion in that case, including the strong and emphatic language used by Mr. Justice AGNEW. In Rachmel v. Clark, 205 Pa. 314, decided in 1903, Hydraulic Works Co. v. Orr was cited with approval and Chief Justice AGNEW's opinion was quoted in part as follows (p. 319) : " Duties arise

out of circumstances.   Hence, where the owner has reason to apprehend danger, owing to the peculiar situation of his property and its openness to accident, the rule will vary.   The question then becomes one for a jury, to be determined upon all its facts of the probability of danger and the grossness of the act of imputed negligence."

Duffy v. Sable Iron Works, 210 Pa. 326, was decided by this court about two and a half years ago and is the last expression of opinion by this court on the subject.   The opinion was written by Mr. Justice THOMPSON who cites with approval and quotes from Hydraulic Works Co. v. Orr.   In his opinion, alluding to some of the attacks made upon Hydraulic Works Co. v. Orr, he says (p. 331): " It is difficult to understand why this case has become like a shuttlecock in battledore to be pitched up and down.   The boy in that case was six years old and while playing in the street strolled into the alley, when the gates were open, and while there the platform fell upon him.   The facts were submitted to the jury and the verdict was in favor of the plaintiff below."   Justice THOMPSON then quotes that part of the opinion in Schilling v. Abernethy, 112 Pa. 437 which approves Hydraulic Works Co. v. Orr.

It will, therefore, be observed that from 1877, the year in which Hydraulic Works Co. v. Orr was decided, until 1904 the principle announced in that case has been recognized and approved time and again by this court.   It is claimed, however, in the majority opinion in the case at bar that certain decisions of this court have practically overruled Hydraulic Works Co. v. Orr.   We will briefly refer to these cases. The first case is Gramlich v. Wurst, from which we have already made a quotation which shows that it sustains Hydraulic Works Co. v. Orr.   Gillespie v. McGowan, 100 Pa. 144, is cited in the majority opinion as sustaining its position.   There, the nearest paved highway ran 300 feet from the place of the accident and the nearest road was about eighty feet.   There were houses about 300 feet off, but the built-up part of the city was nearly one-half mile distant.   The facts, therefore, are not similar to those in Hydraulic Works Co. v. Orr or to those in the case at bar.   It is important in considering the Gillespie case to note the fact that the opinion was written by Mr. Justice PAXSON who had dissented in Hydraulic Works Co. v.

Orr. It will be observed throughout his opinion that he reflects upon this latter case by the use of certain dicta which should have had no place in the decision. This was the first opportunity the learned justice had after dissenting in Hydraulic Works Co. v. Orr to get his views in a majority opinion. In Duffy v. Sable Iron Works, 210 Pa. 326, referring to a dictum of Justice PAXSON in the Gillespie case, Justice THOMPSON speaking for this court says (p. 331) : " A dictum occurs in Gillespie v. McGowan, 100 Pa. 144, that Hydraulic Works Co. v. Orr, 83 Pa. 332 was in direct conflict with Gramlich v. Wurst, 86 Pa. 74, but an examination of that case will show that the deductions leading to such dictum are not warranted and that the case rested upon well-defined and settled principles."

In Rodgers v. Lees, 140 Pa. 475, Mr. Justice GREEN wrote the opinion and Mr. Justice CLARK dissented. The majority opinion in that case distinguishes Hydraulic Works Co. v. Orr. It is true that in his opinion Justice GREEN quotes some dicta from the opinion in Gillespie v. McGowan which reflects upon Hydraulic Works Co. v. Orr; but it should be noted that the dicta are the words of Mr. Justice PAXSON who had dissented in the hydraulic works case, and also that they were obiter and not necessary to the decision of the Rodgers case. It will, therefore, be observed that the cases upon which the majority opinion relies to overthrow the doctrine announced in Hydraulic Works Co. v. Orr cannot be regarded as sustaining the position in view of the numerous cases which distinctly recognize and sustain the principle of that decision.

This is a turntable case and the principles announced in those cases have been recognized and followed not only by the supreme court of the United States, in which they originated, but by the courts of the great majority of the states of the Union as well as by those of England. It is true that New York, New Hampshire and possibly one or two other states reject the doctrine of the turntable cases. But this does not justify the majority of this court in overruling our own cases which specifically repudiate the New York doctrine and are in harmony with the adjudications of the supreme court of the United States and of the courts of the great majority of

the several states of the Union. The earliest turntable case was Railroad Company v. Stout, 84 U. S. 657, decided in 1873. That was the unanimous judgment of the supreme court of the United States, and it was there held: " While it is the general rule in regard to an adult, that to entitle him to recover damages for an injury resulting from the fault or negligence of another, he must himself have been free from fault, such is not the rule in regard to an infant of tender years. The care and caution required of a child is according to his maturity and capacity only, and this is to be determined in each case by the circumstances of that case. " It was also held : " While a railway company is not bound to the same degree of care in regard to mere strangers who are even unlawfully upon its premises that it owes to passengers conveyed by it, it is not exempt from responsibility to such strangers for injuries arising from its negligence or from its tortious acts. " In that case a judgment was sustained in favor of a child six years of age who was injured while playing with other children on a turntable located in an open space, about eighty rods from the company's depot in a village of about 150 persons. The Stout case was followed in the supreme court of the United States by the Union Pacific Railway Company v. McDonald, 152 U. S. 262, decided in 1893, announcing and approving the same doctrine, although not a turntable case. Mr. Justice HARLAN delivered an exhaustive opinion in which he reviews all the cases upon the subject and concludes with an affirmation of the doctrine announced in the Stout case. He notes the fact that Lynch v. Nurdin, 1 Q. B. 29, is cited with approval in nearly all of the cases. He says that it has been claimed that Lynch v. Nurdin was overruled in England ; but he quotes from the opinion of Lord Chief Justice COCKBURN in Clark v. Chambers, L. R. 3 Q. B. Div. 327 (1878) showing the contrary. He also quotes from the lord chief justice's opinion as follows (p. 279): " It appears to us that a man who leaves in a public place, along which persons, and amongst them children, have to pass, a dangerous machine which may be fatal to anyone who touches it, without any precaution against mischief, is not only guilty of negligence, but of negligence of a very reprehensible character, and not the less so, because the imprudent and unauthorized act of another may

be necessary to realize the. mischief to which the unlawful act or negligence of the defendant has given occasion." The learned justice then says (p. 279): "We adhere to the principles announced in Railroad Company v. Stout, supra. Applied to the case now before us, they require us to hold that the defendant was guilty of negligence in leaving unguarded the slack pile made by it in the vicinity of its depot building. : . . It knew that children were in the habit of frequenting that locality and playing around the shaft house in the immediate vicinity of the slack pit. The slightest regard for the safety of these children would have suggested that they were in danger from being so near the pit, beneath the surface of which was concealed (except when snow, wind, or rain prevailed) a mass of burning coals into which a child might accidently fall and be burned to death. Under all the circumstances the railroad company ought not to be heard to say that the plaintiff, a mere lad, moved by curiosity to see the mine, in the vicinity of the slack pit, was a trespasser, to whom it owed no duty, or for whose protection it was under no obligation to make provision. . . . What difference in reason we may observe in this case, is there between an express license to the children of this village to visit the defendant's coal mine, in the vicinity of its slack pile, and an implied license, resulting from the habit of the defendant to permit them, without objection or warning, to do so at will, for purposes of curiosity or pleasure?"

The majority opinion in the present case says that the turntable cases have been disapproved in New York and in a few of the other states. This is true, but this court, on the other hand, affirmed Sioux City & Pacific Railroad Co. v. Stout, 84 U. S. 657, the original turntable case, by a unanimous judgment in Arnold v. Pennsylvania R. R. Co., 115 Pa. 135; and in that case it is said that the doctrine of the turntable cases was approved in Pennsylvania Co. v. Toomey, 91 Pa. 256; Pennsylvania Railroad Co. v. Lewis, 79 Pa. 33; Hydraulic Works Co. v. Orr, 83 Pa. 232; Phila. & Reading Railroad Co. v. Hummell, 44 Pa. 375; and Biddle v. Railway Co., 112 Pa. 551. Shall we now eliminate the principle from our own jurisprudence, overrule all our own cases, and follow the cases of three or four other states which we have expressly repudiated and which, as seen in 1 Shearman & Redfield on Negli-

gence, sec. 73, have been condemned in England and are directly opposed to the current of American cases?

Neither space nor time will permit me to refer to the numerous cases decided in the courts of last resort in the various states of the Union which sustain the doctrine enunciated in Hydraulic Works Co. v. Orr and in the turntable cases. We will, however, refer to and quote from some text-books which without exception support the principles of the turntable cases. The principle underlying these cases is well stated in Ray's Negligence of Imposed Duties, Personal, 33 : "If an act you are contemplating, right in itself, will likely cause some one to expose himself to danger which he does not anticipate, it is your duty to take care that such exposure does not prove injurious to him. In determining the question whether the act will induce such exposure, it is your duty to consider the motives and impulses that induce action by others who are likely to be influenced by your act. If men may be misled in their judgment by your act, you must take measures to warn them or to avoid injuring them by proper care. If children from their known childish instincts and curiosity may be led into danger, such care is due them also." The same learned author also says (p. 28): " The owner of any machine which he knows to be dangerous to children too young to know the danger, and of too immature judgment or discretion to control their natural instinct to amuse themselves with anything that may attract them as a plaything, and which he knows or ought to know may attract them, and who knows it is so placed that it does attract them to play with it—is under a duty, as to such children, to exercise the degree of care which an ordinarily prudent person would use to prevent its injuring them. Whoever, therefore, does anything in or immediately adjacent to a public street, park or locality where children may rightfully congregate and are accustomed so to do, calculated to attract children into danger, which they cannot appreciate, or are too untrained and inexperienced to resist, owes the imposed duty of protecting them against the temptation he places before them, by suitably guarding the source of danger, or, in case this cannot be done, by giving timely warning to their parents or guardians of the existence of the danger.". In 1 Shearman & Redfield on Negligence (5th ed.), section 73, it is said : "It

was held in some English cases, that if a child's own act directly brings the injury.upon him, while the negligence of the defendant is only such as exposes the child to the possibility of injury, the latter cannot recover damages.    But these decisions have been condemned in England, and are directly opposed to the current of American cases.    The law has been settled to the contrary, in America, by the famous series of turntable cases, in which railroad companies were held liable by the federal supreme court, as well as by several state courts of last resort, for injuries suffered by little children, in consequence of their own acts in meddling with railroad turntables, which were left open to public access, unfastened and unguarded, although, of course, perfectly harmless, if let alone."    In a note to the section, will be found a reference to the states whose courts have sustained the doctrine of the text. In volume two of the same work, section 705, it is said : "The owner of land, where children are allowed or accustomed to play, particularly if it is unfenced, must use ordinary judgment and keep it in a safe condition, for they, being without judgment and likely to be drawn by childish curiosity into places of danger, are not to be classed with trespassers,. idlers and mere licensees."

In the recent second edition of his exhaustive work on the Law of Negligence, Judge THOMPSON says (sec. 1024): " A well-grounded exception to the foregoing principles is that one who artificially brings or creates upon his own premises any dangerous thing which from its nature has a tendency to attract the childish instincts of children to play with it, is bound, as a mere matter of social duty, to take such reasonable precautions as the circumstances admit of, to the end that they be protected from injury while so playing with it, or coming in its vicinity.    Things of this kind frequently pass under the designation of attractive nuisances."    In section 1031, the learned author says : "In respect of the first class of cases, that of attractive nuisances, it is to be observed that it would be a barbarous rule of law that would make the owner of land liable for setting a trap thereon, baited with stinking meat, so that his neighbor's dog, attracted by his natural instincts, might run into it and be killed ; and which would exempt him from liability for the consequences of leaving ex-

posed and unguarded on his land a dangerous machine, so that his neighbor's child, attracted to it and attempted to intermeddle with it by instincts equally strong might thereby be killed, or maimed for life." This extract is quoted and endorsed by the supreme court of the United States in Union Pacific Railway Company v. McDonald, 152 U. S. 262.

The same principle is announced in other text-books: Wharton on Negligence (2d ed.), sections 112, 343 and 824 a; Beach on Contributory Negligence (3d ed.), section 204; Barrows on Negligence, p. 69; Bishop on Noncontract Law, section 854.

It is unnecessary to discuss the doctrine of the turntable cases. It has been thoroughly discussed by both the English and the American courts, and for the purposes of this case nothing need be added to the reasoning of those cases. It does not deprive the landowner of the use of his premises nor make him liable for their condition to one who enters without permission. All that it requires, and which humanity demands, is that he will not erect upon his premises a dangerous machine or structure, unguarded or unprotected, so near a public highway that children accustomed to frequent the highway will be allured or enticed into a danger which may result in their death. The doctrine now announced by the majority of this court will require the people in the densely populated parts of the city of Philadelphia to keep their children of tender age at all times in the house or in the charge of a nurse. The playground of such children must be in the house and not upon the public places, even the parks of the cities of the commonwealth. They cannot be permitted to go to the parks for recreation or play without being subjected to the dangers of the traps and pitfalls which a reckless and heartless owner of property may erect or construct. With a small expenditure of money, turntables and other attractive playthings for children may be guarded, and children at play may be protected and get the recreation which they require. Under the evidence in this case, a few dollars would have restored the fence surrounding the turntable, and the children of that populous neighborhood would have been protected from the dangers of the place. I cannot agree that the thousands of people who live in the city shall be required to keep their children in their houses or employ nurses, most of them illy

able to bear the expense, to protect their children when such protection could be given by the owner of the premises with a small expenditure of money.   It seems to me a sacrifice of humanity to the greed of commercialism.

The doctrine announced in the majority opinion is unquestionably a departure from the settled law of this commonwealth.   It is substantially the doctrine of the dissenting opinion in Duffy v. Sable Iron Works, 210 Pa. 326, filed less than three years ago.   It is not in accord with our own cases or with those of the overwhelming majority of the other states; it is in conflict with the decisions of all the federal courts of this country, and it is condemned by the courts of England.

For the reasons stated, I would affirm the judgment of the court below.